856 So.2d 56 (2003)
Lawrence Scott PATTON, Plaintiff-Appellee,
v.
Linda Gay Moore PATTON, Defendant-Appellant.
Linda Gay Moore Patton, Plaintiff-Appellant,
v.
Lawrence Scott Patton, Defendant-Appellee.
Nos. 37,401-CA, 37,402-CA.
Court of Appeal of Louisiana, Second Circuit.
September 24, 2003.
Rehearing Denied October 23, 2003.
*58 Sadye B. Liepelt, for Appellant.
Mason L. Oswalt, Monroe, for Appellee.
Before BROWN, STEWART, GASKINS, CARAWAY and PEATROSS, JJ.
BROWN, C.J.
Linda Patton appeals a judgment denying her claim for final periodic spousal support. For the following reasons, we reverse and render.

Facts and Procedural Background
Linda and Scott Patton were married in January 1985 and physically separated when Scott left the matrimonial domicile in November of 2001. No children were born from this marriage, and neither party has children of his or her own.
On January 14, 2002, Scott filed a petition pursuant to La. C.C. art. 102 stating his intent to move for a divorce after the passage of 180 days from service. In two supplemental petitions, he asked for an injunction prohibiting Linda from alienating, disposing, or encumbering the community property, that he be granted the exclusive use of the family home, and for the court to determine whether Linda was entitled to interim periodic spousal support. Linda filed a separate action for a divorce based upon allegations of Scott's adultery. She asked for both interim and final support. In a third supplemental petition, filed on May 21, 2002, Scott sought a no fault divorce because he and Linda had been living separate and apart for over 180 days without reconciliation. Their actions were consolidated.
On June 20, 2002, an agreement was reached and a divorce was granted based on the parties living apart without reconciliation for over 180 days. Pertinent to this appeal, the judgment provided the following: Linda was granted interim periodic spousal support of $1,000 per month which would terminate as provided in La. C.C. art. 113 (upon the rendition of a judgment awarding or denying final spousal support or after 180 days from the divorce judgment whichever occurred first); both parties were prohibited from disposing, alienating, or encumbering the community property pending a partition; Linda was awarded exclusive use of the family home and her vehicle; Scott was awarded the use of his vehicle; Scott waived any rental claim on Linda's use of the family home; and Linda was declared to be free from fault.
On the day the divorce judgment was rendered, Scott moved to set a hearing on the question of final periodic spousal support. The hearing was set for October 3, 2002. Linda revised her affidavit of income and expenses to add the cost of returning to college to obtain another degree. Following the hearing, the trial court determined that Linda was "voluntarily underemployed;" Linda's request for *59 educational expenses was unreasonable; and Linda had "reasonably liquidable" assets available to meet her needs. The trial court remarked that Linda had no monthly house note to pay or children to support. Commenting on how "these are some of the most frugal people that have ever come before (him)," the court suggested that if Linda would employ this same "frugal attitude," she would "clearly be able to live among the assets that she has and the income that she could get." From the judgment denying final spousal support, which was signed on October 23, 2002, Linda has appealed.

Discussion
A court may grant final periodic support to a spouse who, prior to the filing of an action to terminate the marriage, was free of fault. Once freedom of fault is established, the basic tests for the amount of spousal support are the needs of that spouse and the ability of the other spouse to pay. La. C.C. arts. 111, 112; Carr v. Carr, 33,167 (La.App.2d Cir.04/05/00), 756 So.2d 639; Faltynowicz v. Faltynowicz, 30,605 (La.App.2d Cir.06/24/98), 715 So.2d 90. The award for final periodic spousal support is governed by La. C.C. art. 112, which commands the court to consider all relevant factors. The nine specific factors listed in C.C. art. 112 are not exclusive. The listed factors as well as other relevant factors are for the purpose of determining entitlement, amount, and duration of final support. Article 112 also limits the amount to not exceed one-third of the obligor's net income.
The trial court is vested with great discretion in making post-divorce alimony determinations, and its judgment will not be disturbed absent a manifest abuse of discretion. Carr, supra. In this case, it was stipulated that Linda was without fault, and it is clear that Scott has the ability to pay the small sum she is requesting.

Relevant factors
The earning capacities of the parties, their age, and the duration of the marriage are relevant factors that are listed in La. C.C. art. 112. The relative financial positions of the parties and the standard of living during the marriage are not listed in C.C. art. 112 but can be relevant factors. As stated above, all relevant factors are to be considered and the court is not limited to those specifically listed in the code article. See Knowles v. Knowles, 02-331 (La.App. 3d Cir.10/02/02), 827 So.2d 642.
Scott is an attorney practicing in Monroe, Louisiana. We find that both Scott's assets and income, as the support payor, are relevant factors in setting an award for spousal support. According to the parties' income tax return, Scott's adjusted gross income was $218,894.50 for the year 1999, $183,054.75 for the year 2000, and $203,548.76 for the year 2001. By contrast, Linda, at Scott's urging, subordinated her career to stay at home. She worked intermittently at first with banks but for the last eight years of the marriage had no significant work history. During the almost 17-year marriage, she became economically dependent on Scott. Obviously, this was Scott's desire, at least, until he left her.
Linda Patton was 49 years old, a graduate from Northeast Louisiana University with a degree in marketing, who spent the majority of her married life as a wife and homemaker, and particularly, for the last eight years of the marriage, she has been out of the work force. Although he discouraged her from working during the marriage, when he left, Scott directed Linda to get a job. Linda sought several positions with a bank, an insurance company, and a book store; however, the only offer she received was with Glenwood Regional Medical Center in West Monroe making *60 $10.48 per hour. Scott now argues that Linda was wrong to accept the first job offered, a position in which she is earning less than she did at her last job in banking.
Difficulty in finding employment suitable for the spouse's age, training, and ability is a proper consideration in determining whether a claimant is voluntarily underemployed. Falterman v. Falterman, 98-158 (La.App. 5th Cir.01/13/99), 726 So.2d 1023; Fountain v. Fountain, 93-2176 (La.App. 1st Cir.10/07/94), 644 So.2d 733.
While Linda took the first job offered, she has never stated that she is unwilling to accept a higher paying job or that she would not continue to look for other avenues of employment. Simply because she accepted employment in hospital administration, rather than the banking industry, does not necessarily equate with her being "underemployed." The record is devoid of any showing that Linda would have been able to secure employment in banking. Furthermore, she is employed in the accounting department at Glenwood, which is similar to her prior work in banking. Her yearly gross earnings at the hospital will total almost $22,000, which is only $2,000 less than the maximum she ever earned in banking.
Before accepting Glenwood's offer, Linda applied without success for work at Regions Bank, State Farm Insurance Company, and Christian Family Book Stores. It is apparent that Linda actively sought and obtained employment despite having been out of the work force for nearly a decade. Considering the current economic times, coupled with Scott's insistence that Linda not work during the marriage but "find a job" after he left her, it is somewhat hypocritical to fault Linda for accepting employment at Glenwood.
As long as the trial court's determination is reasonable, based upon the record as a whole, we should not disturb it. However, for the reasons enumerated, the trial court's finding that Linda is underemployed is unreasonable.

Depletion of Assets
Each party holds various retirement and IRA accounts. They also jointly own an array of stock investments. In January 2002, in violation of the restraining order, Linda unilaterally sold half of the stocks in their Fidelity investment account and received $153,000 in cash. Linda put this money into her checking account with the intent of buying a lot and building a smaller house; however, she testified, "then Scott called ... and he won't let me buy the lot ... and then he called" and directed her to put the money in CenturyTel stock. Linda then reinvested $123,000 into CenturyTel stock and placed $30,000 into her bank savings account.
Although a spouse claiming alimony is not required to sell her non-liquid assets to support herself, she is required to deplete her liquid assets to some extent before she may be entitled to support after the divorce. Falterman, supra. In determining to what extent any depletion of assets is required of a spouse claiming post-divorce support, the court must apply a rule of reasonableness. Falterman, supra; Gardner v. Gardner, 97-0749 (La. App. 1st Cir.04/08/98), 710 So.2d 1153. The type of asset under consideration and the consequences of its liquidation are to be considered by the court. Falterman, supra.
There cannot be an exact formula or rule for deciding whether and to what extent any depletion of assets is required of a support claimant. Courts must apply a "rule of reasonableness" in light of such *61 factors as the value and liquidity of the assets, the ages and the mental and physical health of the parties, and their relative ability, education, and work experience. Loyacano v. Loyacano, 358 So.2d 304 (La. 1978). The problem is of such a nature as to be insusceptible of solution by any exact formula or monetary index, and the court should proceed with great caution and due regard for the probable long range effects of any depletion contemplated. (Emphasis added). Id.
We find Scott's allegation that his former wife has a "net worth" of over $400,000 to be, at best, misleading. While it is possible that Linda will receive such an amount upon a partition, it is unknown at the present time what will be given to Linda; in the meantime, she is prevented from selling any community property due to the court-ordered injunction. At the time of the hearing, the CenturyTel stock had suffered a loss and was valued at $96,000. Linda now has $28,000 in her savings account. Because the community has yet to be divided and these assets were derived unilaterally from community investments, it is arguable that their alienation would contravene the injunction. While she is living in the former matrimonial domicile, she has to pay all utilities, etc. The house is paid for and valued at $150,000; however, Linda does not have title to the house, and there is an injunction preventing its sale.
The $28,000 in her savings account is small compared to Scott's annual salary, which exceeds $200,000 per year. Put differently, Scott's salary is over seven times larger than what Linda has in her bank account. Further, Linda's funds must be accounted for in the forthcoming partition, while Scott's salary must not.
Both parties stipulated that Linda was without fault. Linda's Art. 103 petition for divorce was based upon Scott's having an extra-marital affair. Scott does not deny this allegation. It is improper to penalize Linda, the party without fault, by compelling her to sell stock at a loss in order to make ends meet and then be forced to account for the stock at its greater value in the partition. Further, there is an injunction in place, and it is arguable that she cannot sell this stock. Therefore, we find the trial court's directive that she must deplete these assets to be unreasonable.

Needs
Scott is employed as an attorney in Monroe, Louisiana, earning over $200,000 a year. Linda has been out of the workforce during the last eight years of their marriage and before that time, had only intermittently worked at various banks. After Scott left, Linda looked for work and in December found a job in the accounting department at Glenwood Regional Medical Center in West Monroe. She earns $10.48 per hour with a salary cap of $13.08 per hour.
Linda's monthly net earnings at Glenwood are $1,347.83. She calculates that her expenses exceed her means by $1,132.75 each month. She urges that the trial court should have awarded her $1,000 a month for final spousal support. We again note that Scott agreed to interim support of $1,000 per month. It appears incongruous that Scott now argues that Linda's needs are less.
Although finding that Linda had sufficient means to support herself, the trial court went further and ruled that certain but not all of Linda's listed expenses were unnecessary.[1]
*62 In calculating final support, the court should consider all relevant factors. Considering all the relevant factors, including the relative financial positions of the parties, their standard of living, their ages, the duration of the marriage and their earning capacities as well Scott's agreement to pay $1,000 per month interim support and his clear ability to do so, we do not find Linda's request unreasonable.
This action by Scott appears hasty. The judgment of divorce provided interim support which would have terminated in six months. Upon a division of the community property, Linda's share will become clear and under La. C.C. art. 116, Scott can seek a modification of the award of final periodic spousal support. Until such time, however, we find that Linda is entitled to spousal support. Accordingly, via La. C.C.P. art. 2164, we hereby award Linda final periodic spousal support in the amount of $1,000 per month.

Conclusion
For the foregoing reasons, we REVERSE the portion of the judgment denying any permanent periodic spousal support and find that Linda Patton is entitled to an award of permanent periodic spousal support in the amount of $1,000 per month.
Therefore:
IT IS ORDERED, ADJUDGED and DECREED that LAWRENCE SCOTT PATTON pay to LINDA GAYE MOORE PATTON final periodic spousal support in the amount of $1,000 monthly retroactive to the date interim support ended. All costs of this appeal are assessed against Lawrence Scott Patton.
STEWART, J., dissents with reasons.
CARAWAY, J., dissents for the reasons assigned by STEWART, J.
STEWART, J., dissenting.
I respectfully dissent from the majority opinion reversing the trial court's denial of permanent periodic spousal support for the appellant, Linda Gay Moore Patton. In denying the request for permanent support, the trial court found that Linda is voluntarily underemployed and that she has sufficient liquid assets available to meet her needs until she obtains better paying employment. The record supports these findings.
A former spouse who seeks alimony has the burden of proving necessitous circumstances or insufficient means for his or her maintenance. Faltynowicz v. Faltynowicz, 30,605 (La.App.2d Cir.6/24/98), 715 So.2d 90; Guillory v. Guillory, 626 So.2d 826 (La.App. 2d Cir.1993). Earning capacity may be considered in awarding alimony, but that factor alone is not a proper basis for rejecting the award. Faltynowicz, supra. Difficulty in finding employment suitable for the age, training, and ability of the spouse are also proper considerations. Id.
A spouse claiming support may also be required to deplete liquid assets to some extent before being entitled to support payments. Settle v. Settle, 25,643 (La. App.2d Cir.3/30/94), 635 So.2d 456, writ denied, 94-1340 (La.9/16/94), 642 So.2d *63 194. As discussed in Faltynowicz, supra, there is no exact formula regarding whether or to what extent asset depletion is required of a spouse claiming support. The "rule of reasonableness" must be applied in considering such factors as the value and liquidity of assets; the ages and the mental and physical health of the parties; their other financial responsibilities; their relative abilities, education, and work experience; and the potential effect of asset depletion on any children of the marriage. Faltynowicz, supra; Settle, supra.
The trial court is vested with great discretion in making alimony determinations, and such determinations are not to be disturbed absent a manifest abuse of discretion. Settle, supra.
Linda Patton is a 49-year old college graduate with some work experience, particularly in the banking industry. The record establishes that she conducted a very short job search of less than a month which resulted in a job at Glenwood Regional Medical Center paying $10.48 an hour as of the time of trial. Patton has made no further efforts to obtain a higher paying job even though such jobs may be available. In her testimony, Linda stated that she had gotten a letter about taking a test for a job at State Farm. However, Linda had already started the job at Glenwood and did not follow up with State Farm. The record does not show that Linda's age, training, or abilities have caused her any particular difficulty in obtaining employment since re-entering the workforce. The trial court found that Linda took the first job offered to her but that she might easily find a higher paying job based on her education, work history, abilities, and resumé. The record supports this finding.
There is also ample support in the record for the trial court's finding that Linda has a reasonable amount of liquid assets available to meet her needs. In addition to her income, Linda has slightly less than $30,000 in a savings account and shares of stock valued at $96,000 or more as of the time of trial. As stated in the majority opinion, Linda unilaterally sold her half of stocks from a Fidelity investment account and received $153,000 in cash. She later put $30,000 in a savings account and reinvested the remainder for retirement. The invested funds had apparently incurred some losses as of the time of trial. Linda's testimony clearly indicates that she wanted to reinvest the money in Centurytel stock because she felt it was a good retirement tool.
The trial court believed that Linda could utilize these funds as necessary to cover her expenses until she obtains a better paying job. This is not unreasonable. Although the trial court issued a preliminary injunction in the judgment of divorce to prohibit either party from disposing of community property prior to the petition, there is also information in the record indicating that the parties split certain accounts, one such account being the Fidelity account from which Linda sold her half of the stocks. Linda has employment from which she derives income, and she has these additional liquid assets available for her disposal. In addition, Linda is educated and able to work. She has no major financial responsibilities other than care for herself, and there are no children who might potentially be impacted by asset depletion. On this record, Linda failed to meet the burden of proving either necessitous circumstances or insufficient means for her maintenance.
For these reasons, I find no abuse of the discretion in the trial court's judgment denying permanent support and must respectfully dissent.

*64 APPLICATION FOR REHEARING
Before BROWN, STEWART, GASKINS, CARAWAY, and PEATROSS, JJ.
Rehearing denied.
STEWART and CARAWAY, JJ., would grant rehearing.
NOTES
[1] The trial court denied the following requested monthly expenses as unnecessary.

1) Cablevision$43.58
2) Cell phone$35.00
3) Facials, manicures, and pedicures $97.75
4) Educational expenses$197.21
5) Internet$23.90
6) Pet expenses$24.67
7) Credit cards$41.00.
The trial court reduced the following requested monthly expenses:
1) Lawn carefrom $131.25 to $45.00
2) Clothing allowancefrom $327.55 to $300.00
3) Household suppliesfrom $148.68 to $118.68
4) Foodfrom $302.10 to $300.00.