MOORE, J.
| Thomas J. Anderson (“Jason”) appeals a judgment ordering him to pay his ex-wife, Angela Anderson, final periodic support of $1,035 a month, retroactive to the date of divorce. We amend and affirm.

Factual and Procedural Background

Jason and Angela got married in January 1991; they had one child, a daughter, who was 18 by the time of the divorce. The couple physically separated in October 2009, and Jason filed for an Art. 102 divorce; Angela reconvened, seeking an Art. 102 or 103 divorce and demanding interim and final periodic support. After a hearing on June 21, 2010, the district court granted an Art. 102 divorce.
Although the minutes do not reflect it, the parties testified that in December 2009, Jason was ordered to pay, as interim support, the house note on the former marital home, and he did so until they sold the house in March 2011. As a result of the sale, each received about $6,000 as a community share of the equity.
At a hearing in July 2011,[1] the parties were unclear whether the issue before the court was interim or final support. Ange *211 la argued that she had asked the district court to maintain interim support equal to the house note, over $900 a month, until final support was fixed, but Jason argued that the interim support could not exceed 180 days. The court stated that it would rule only on final support.

\9Evidence at the Hearing

Both sides’ financial pictures were fairly intricate. Angela works as a human resources assistant for Gilley Enterprises, a McDonald’s franchisee in West Monroe, at $9.85 an hour, the same pay she has earned since 2007. She does not work a full 40-hour week because of depression. Her gross monthly pay is $1,154, and after withholdings she nets $770. During the marriage, she left work and attended a few quarters at Louisiana Tech to study nursing and become more self-sufficient, but had to drop out because it was too demanding; she still hopes to become a nurse.
After the parties sold the marital home, Angela moved into a house owned by her father, Sammy Byrd, and was living there rent-free with the parties’ adult daughter and with her sister. She claimed monthly expenses of $2,563.83, including rent of $600 a month, even though she was not paying rent; food and household supplies of $602, including groceries and eating out; clothing of $100, including “school uniforms”; transportation expenses of $770, even though she listed fuel and maintenance at $236.50 and testified that insurance ran about $56 a month; utilities of $203, or one-half (because she shares the house with her sister) of total utilities, including land line telephone; pet care of $53 a month; and cell phone charge of $50 a month. With monthly expenses totaling $2,563 and net income of $770, she con-eluded that she was $1,793 in the red each month.
Jason was always the primary provider for the household. His principal employment was with Regency Gas (now known as Energy Gas Transfer), at $23 an hour; his 2010 W-2 showed a salary of $63,117. In | ¡¡addition, he pursued side businesses. He had formed Superior Weed Control, an oilfield service contractor, using as startup capital a loan secured by a $30,000 certificate of deposit pledged by Angela’s father, Mr. Byrd. In 2009, Superior Weed showed gross sales of $79,617, gross income of $65,182, and a net profit of $19,697. Then, around the time of the divorce, Jason formed another company, Ash Oilfield Services, to perform contracting similar to Superior Weed. Ash Oilfield reported 2010 business income of $17,940. This, with his salary from Energy Gas Transfer, would yield a total annual income of $80,835; by affidavit, he claimed to net $4,296.28 a month.
Jason testified that his monthly expenses totaled $4,959 a month, exceeding his available income by $662.72. On cross-examination, however, he admitted that his truck note and insurance were actually paid by Superior Weed, and that many daily charges to restaurants and fast-food places appeared on Superior Weed’s credit card; these items should not have been listed as personal charges. Even though he claimed to be running a deficit, he paid a caterer for his recent wedding, bought a $160,000 house and testified he was unsure how much his new house note would be.[2] In addition, he had recently bought a self-storage facility, on which he owed a note of about $1,000 a month. He admitted giving his adult daughter $250 a month and paying her car note and auto expenses. Finally, he had sold Superior Weed, and liquidated its assets, without making any *212 effort to repay Angela’s father, Mr. Byrd, the $30,000 he had received when Mr. Byrd Lpledged a CD to start up the company.
Mr. Byrd testified that he had helped the couple many times over the years, and confirmed that he pledged his CD to secure a loan for Jason to start Superior Weed, but Jason never repaid him. Mr. Byrd was living in a trailer while Angela and the other daughter were staying in his house rent-free, but this was only until Angela got back on her feet. He said he wanted to retire soon and move back into his house.

Action of the District Court

By written reasons, the court found that Angela was free from fault in the divorce, a finding not contested on appeal. The court then analyzed the parties’ finances in a random manner, first finding that Angela had received “abundant support” from her father, but this would not be considered in setting interim or final support, Shelton v. Shelton, 395 So.2d 899 (La.App. 2 Cir. 1981).
The court found that Jason was an aggressive worker with a good salary and strong business income totaling $127,272 in 2009. In 2010, his salary and business income totaled $80,835, but the court added Ash Oilfield’s claimed depreciation of $11,621 to yield a total of $92,456, or $7,704 a month gross. However, with his recent purchase of a house for $160,000 and a self-storage facility for $100,000, the court found that Jason “did not address the debt [to Mr. Byrd] in a reasonable manner.” The court accepted Jason’s claimed net monthly expenses of $4,959, but disallowed the following: car note, fuel and allowance paid to the couple’s major daughter, $765; payment into a 401(k) match plan, $106.96; and house note |sof $1,089, only to the extent that it exceeded Angela’s housing cost of $600, or $489. The court reasoned that these three adjustments freed up $1,360 a month in Jason’s budget.
As for Angela, the court found that even though she expressed a desire to become a nurse, there was no evidence of a “plan of education expense and forecast of greater earning capacity.” The court therefore took her hourly wage and imputed a 40-hour week ($9.85 x 40 = $394), or a monthly gross of $1,707.33. He reduced this by “about 15%” to reflect withhold-ings, for a monthly net of $1,450. Of her claimed expenses of $2,563.83, the court disallowed the following: dog care, $53; cell phone in addition to land line, $50; and school uniforms, $50. The court added an “appropriate adjustment” for her health care premium, $74.36. This brought her necessary expenses to $2,485.09. Because her necessary expenses exceeded her monthly net income by $1,035, the court found her in need of support under La. C.C. art. 111.
Finally, the court found that Angela’s proven need, $1,035, was within the statutory cap of one-third of Jason’s claimed net income (1/3 x $4,296.28 = $1,432.09), La. C.C. art. 112 C. The court therefore awarded final periodic support of $1,035, adding that this could be modified or extinguished on the appropriate showing, La. C.C. arts. 114, 115.
The court rendered judgment ordering Jason to pay Angela final periodic support of $1,035 a month beginning the day after the rendition of divorce, June 22, 2010, and payable each successive month on the 22nd, and that any arrearage created by this retroactive date would be satisfied by | f,paying an additional $500 a month.
Jason has appealed, raising five assignments of error.

Discussion: Award of Final Periodic Support

By his first three assignments of error, Jason urges the court erred in finding that *213 Angela was in need of final periodic support, in assessing her means and expenses, and in assessing Jason’s ability to pay support. He argues that the claimant spouse has the burden of proving necessitous circumstances or insufficient means for his or her maintenance. Carr v. Carr, 33,167 (La.App. 2 Cir. 4/5/00), 756 So.2d 639, and citations therein; Lawhon v. Lawhon, 2007-42679 (La.App. 2 Cir. 10/24/07), 966 So.2d 170. He contends that Angela did not prove she was in necessitous circumstances, and thus was not entitled to any final periodic support; alternatively, he urges the district court improperly applied the factors of La. C.C. art. 112 B and awarded an excessive amount.
A spouse may be awarded final periodic support when he or she “has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay[.]” La. C.C. art. 112 A. The claimant spouse does not need to prove “necessitous circumstances.” Jones v. Jones, 35,502 (La.App. 2 Cir. 12/5/01), 804 So.2d 161. Final periodic support, formerly known as “permanent alimony,” is limited to an amount sufficient for maintenance as opposed to continuing an accustomed style of living. Mizell v. Mizell, 40,601 (La.App. 2 Cir. 1/25/06), 920 So.2d 927. The court shall consider all relevant factors in determining the amount and 17duration of final support. La. C.C. art. 112 B.[3] A spouse who is working full-time for a respectable salary and has no unusual expenses or obligations is not in necessitous circumstances so as to justify an award of final periodic support. Carr v. Carr, supra, and citations therein. Nevertheless, the trial court has great discretion in awarding final periodic support to a party not at fault. Ducote v. Ducote, 339 So.2d 835 (La.1976); Carr v. Carr, supra.
By his first assignment of error, Jason argues that Angela failed to prove she was “in necessitous circumstances” that would warrant any award of final periodic support. Citing Carr v. Carr, supra, and Harlow v. Harlow, 471 So.2d 895 (La.App. 2 Cir.1985), he urges she is capable of working full-time, makes a respectable salary, has no unusual obligations, and recently received $6,000 from the sale of the former community house. As noted, however, Art. 112 no longer requires proof of “necessitous circumstances,” but only proof of need. Jones v. Jones, supra, and citations therein.
The operative question is whether the district court abused its discretion in finding need. In Carr v. Carr, Ms. Carr earned $1,400 a month as a teacher and had supplemental income bringing her annual earnings to $20,000; this court affirmed the finding that she lacked sufficient means of |ssupport. Notably, Angela’s current earnings are comparable to Ms. Carr’s, although the latter were in 1995 dollars. In Harlow v. Harlow, Ms. Harlow earned $1,500 as a teacher and was receiving $1,200 a month in child support; this court reversed the finding that she was in necessitous circumstances. The $1,500 a month salary that *214 we deemed “respectable” in 1985 may, today, leave a spouse in need of support.
There is no exact formula or rule for deciding whether and to what extent a spouse claiming final periodic support must deplete her assets. Loyacano v. Loyacano, 358 So.2d 304 (La.1978); Patton v. Patton, 37,401 (La.App. 2 Cir. 9/24/03), 856 So.2d 56. Angela’s $6,000 settlement is probably not large enough to generate income and the principal would be depleted in two years if used in the manner Jason has suggested. The district court did not abuse its discretion in finding that with her earning potential and her property settlement, Angela is in need of final periodic support.
By his third assignment of error, Jason contests the district court’s assessment of his ability to pay. His main argument is that he works two jobs, putting in extraordinary hours to generate a handsome income, and should not be penalized for his industry. The statute expressly authorizes the court to consider the earning capacity of the parties. La. C.C. art. 112 B(3). Jason’s financial records and tax returns prove his actual earnings and support the district court’s finding as to his earning capacity.
Jason specifically contests the court’s decision to disallow $4,100 he spent to buy a work truck for Ash Oilfield. The record shows that this was |9an expense of Ash Oilfield, and not of Jason personally, so we perceive no abuse of discretion.
Jason also argues that the district court erred in disallowing, as a claimed expense, the $415 he pays for the parties’ adult daughter’s car note. He asserts that this is a community obligation. However, the jurisprudence clearly does not allow the support of major children to be considered a living expense of one of the spouses. Mizell v. Mizell, supra, and citations therein. The district court did not abuse its discretion in disallowing the daughter’s car note, fuel and allowance.
By his second assignment of error, Jason urges the court erred in assessing Angela’s means and expenses. He contends that Angela should be held to the same standard of industry as himself, aggressively working two jobs. Admittedly, Angela appears content with a job paying little and offering no prospects of advancement. However, the court imputed to her the wages of a 40-hour week even though her pay stub showed only about 36 hours’ actual work. Moreover, a spouse is not required to take employment of any nature immediately following divorce; difficulty in finding employment suitable for the spouse’s age, training and ability is a proper consideration. Patton v. Patton, supra; Faltynowicz v. Faltynowicz, 30,605 (La.App. 2 Cir. 6/24/98), 715 So.2d 90. On this record, we cannot say the district court abused its discretion in failing to assign Angela a greater earning capacity.
Jason urges the court erred in accepting several of Angela’s claimed expenses. He contends that $600 a month rent is improper because she is | innot actually paying any rent and, at any rate, there was no proof that her rent (if she had any) would be $600. Angela’s father was allowing her to stay in his house rent-free, as he said, for the time being. The district court was entitled to treat this as financial assistance provided by a parent for food, shelter or clothing; such gratuity does not relieve the paying spouse of the duty to pay periodic final support to his ex-wife. Shelton v. Shelton, supra; Jeansonne v. Jeansonne, 550 So.2d 973 (La.App. 5 Cir. 1989). In Shelton v. Shelton, supra, this court approved the trial court’s resort to “equitable means” to fix a fair value for housing provided by the parent to the claimant spouse. Although hard proof *215 would have been preferable, we find no abuse of discretion in allowing Angela a modest $600 a month for rent.
Jason also argues that any part of Angela’s utilities expense of $203 attributable to Internet and cable fees is unnecessary for her maintenance. In Patton v. Patton, supra, the district court found the ex-wife’s claimed Internet fee was unnecessary; however, this court reversed the judgment denying periodic support, and did not hold that Internet access was inappropriate for final period support. On this record, the district court did not abuse its discretion in treating Internet and cable access as an item of maintenance for Angela. Jason further contends .that Angela’s claimed expenses of $65 a month for hair coloring and $107.50 for weekend dining out were inappropriate. In Nowlin v. Nowlin, 482 So.2d 882 (La.App. 2 Cir. 1986), this court disallowed the ex-wife’s claim for vacation and recreation expenses. Although coiffeur and dining out stretch the limits of “need of support” under Art. 112 A, we find no manifest abuse of | n discretion, given Angela’s depression and anxiety.
Finally, Jason contends the court erred in granting Angela a transportation expense of $770 a month, when she proved expenses of only $292.50. This argument has merit. Angela claimed $770 a month on her affidavit, but testified that fuel for her commute from Ruston to West Monroe cost $236.50 a month, and the insurance on the 2005 Chevy Z71 truck (received in the property settlement) was $56 a month. This yields a total of $292.50. She testified that she was actually using her father’s car to commute because she considered the Chevy truck “unreliable,” but offered no proof of this, or that she was paying her father, or paying anyone, for the truck. In short, the record does not support the district court’s finding that $770 a month is a necessary transportation expense for Angela. The judgment will be amended to reduce this item to the amount proved at trial, $292.50. This assignment of error has merit.

Duration of Periodic Support

By his fourth assignment of error, Jason urges the district court erred in not setting a duration for the periodic support. He concedes that Art. 112 does not require the court to set a duration for final periodic support, Harmon v. Harmon, 12-580 (La.App. 3 Cir. 11/7/12), 101 So.3d 1122, but argues that the court must determine the “amount and duration” of final support, considering the “time necessary for the claimant to acquire appropriate education, training, or employment,” La. C.C. art. 112 B(5). He cites Angela’s testimony that she still wants to go to nursing school, and argues that setting a duration would encourage her to seek self-sufficiency. |12He concludes that the court’s failure to do so was an abuse of discretion.
The court is to consider all relevant factors in determining the amount and duration of final support. La. C.C. art. 112 B. The article permits, but does not require, the court to set a period of time for the award. La. C.C. art. 112, Rev. Comm. (c); Harmon v. Harmon, supra; Voyles v. Voyles, 2004-1667 (La.App. 3 Cir. 5/4/05), 901 So.2d 1204. A time limit is appropriate if it is rehabilitative. La. C.C. art. 112, Rev. Comm. (c); Arnold v. Arnold, 2002-0819 (La.App. 1 Cir. 4/2/03), 843 So.2d 1167. An award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary. La. C.C. art. 114.
Angela’s work history consisted of low-paying jobs that allowed her to leave and pick up her child from school and dedicate herself to the family home. Although she *216 expressed a desire to study nursing, her academic track record was poor, and neither she nor Jason offered any evidence about how long it would take to earn a nursing degree. The district court aptly noted, “no evidence of a plan of education expense and forecast of greater earning capacity was presented,” but stated that the evidence “might establish a future modification of the support award.” On this record, the court did not abuse its discretion in setting no time limit for periodic support but leaving any modification to the procedure set by Art. 114. This assignment of error lacks merit.
1 iaRetroactivity of Award
By his fifth assignment of error, Jason urges the district court committed manifest error in making the award of final periodic support retroactive to the date of divorce rather than the date of rendition of judgment. Under La. C.C. art. 113, if a claim for final spousal support[4] is pending when the divorce is rendered, the interim spousal support award shall terminate upon rendition of judgment awarding or denying final spousal support or 180 days from the date of the divorce judgment, whichever occurs first, unless extended for good cause shown. He concedes that on this record, the status of the interim award is “murky,” in that the parties agreed to an intei’im award in December 2009, but this was not filed in the record; under Art. 113, this would expire in June 2010; in June 2010, Angela asked the court to extend the interim award, and a hearing was scheduled for November 8, 2010, but continued; there appears to be no express ruling extending the interim award. Jason contends that the pro tem judge’s ruling, making final support retroactive to June 22, 2010, effectively terminated interim support as of that date, contrary to the parties’ agreement that the pro tem judge would decide only final support. He concludes that under the circumstances, final support should take effect only from the date of judgment, November 9, 2011, and the parties should litigate the duration of interim support separately.
114Angela responds that no interim award was in effect at the time of the judgment awarding her final periodic support. She cites La. R.S. 9:321 B(2), Retro-activity of judgment concerning spousal support:
If an interim spousal support allowance award is not in effect on the date of the judgment awarding final spousal support, the judgment shall be retroactive to the date of judicial demand, except for good cause shown.
She concludes that under this statute, the final award is presumptively retroactive to date of judicial demand, and suggests that the district court was entitled to find no good cause to set a later effective date.
While we agree with Jason’s assessment that the procedural history is “murky,” the record supports a finding that the interim support award was not in effect by the time of the instant judgment. Both sides testified that the interim support, ordering Jason to pay the house note on the marital home, was entered in December 2009; this would expire by June 2010, La. C.C. art. 113. They also testified that they sold the house in March 2011; this, presumably, extinguished the obligation to pay the note, if it still existed. At the instant hearing, counsel for Jason argued, “We maintain there’s no interim periodic spousal support due.” On this *217 record, the court was not plainly wrong to find that the interim award was not in effect at the time of judgment. Under R.S. 9:321 B(2), the final award had to be retroactive to date of judicial demand. Loftin v. Loftin, 2009-0795 (La.App. 3 Cir. 2/3/10), 28 So.3d 1274. The record also supports the court’s implicit finding of no good cause to set a later effective date. This assignment of error lacks merit.

11SConclusion

For the reasons expressed, the judgment is affirmed insofar as it found Angela Byrd Anderson to be in need and entitled to final periodic support, effective June 22, 2010. The judgment is amended, however, to order Thomas Jason Anderson to pay the sum of $557.50 in final periodic support. The remaining incidental provisions of the judgment are affirmed.
Each party is to pay one-half of appellate costs.
AMENDED AND AFFIRMED.
BROWN, Chief Judge, concurs with written reasons.

. The hearing was before a pro tem judge.

. His affidavit listed housing as $1,089 a month.

. Under C.C. art. 112 B, the factors may include:
(1) The income and means of the parties, including the liquidity of such means.
(2) The financial obligations of the parties.
(3) The earning capacity of the parties.
(4) The effect of custody of children upon a party’s earning capacity.
(5) The time necessary for the claimant to acquire appropriate education, training, or employment.
(6) The health and age of the parties.
(7) The duration of the marriage.
(8) The tax consequences to either or both parties.

. Article 113, enacted in 1997 and last amended in 2003, uses the term final "spousal support," while Art. 112, also enacted in 1997 but last amended in 2006, calls it "final periodic support."