Judgment rendered August 14, 2019.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 52,728-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

REBECCA LEIGH BLOXOM                    Plaintiff-Appellee

versus

LONNIE KEITH BLOXOM                     Defendant-Appellant

* * * * *

Appealed from the
First Judicial District Court for the
Parish of Caddo, Louisiana
Trial Court No. 607550

Honorable Robert P. Waddell, Judge

* * * * *

LAW OFFICE OF BRYCE DENNY, LLC          Counsel for Appellant
By: Bryce J. Denny

GATTI & MERCKLE LAW FIRM                Counsel for Appellee
By: Ryan E. Gatti
    Emily S. Merckle

* * * * *

Before GARRETT, COX, and McCALLUM, JJ.

**GARRETT, J.**

Lonnie Keith Bloxom appeals from a trial court judgment awarding his former wife, Rebecca Leigh Bloxom, $925 per month in final periodic spousal support, pursuant to the provisions in our law pertaining to domestic abuse.  We affirm the trial court judgment.

## FACTS

Lonnie and Rebecca married in December 2015, and thereafter lived in DeSoto Parish.  They separated on November 24, 2017, when Lonnie was arrested for domestic abuse battery after he slapped Rebecca and pulled her hair out.  Rebecca moved to Caddo Parish, where she resided in a house owned by her mother.

On March 21, 2018, Rebecca filed a petition for protection from abuse, pursuant to La. R.S. 46:2131 *et seq.* or La. R.S. 46:2151, in Caddo Parish.  She alleged that on March 20, 2018, Lonnie attacked her, grabbed her throat, face and wrist, pulled her hair, hid her phone and wallet, refused to allow her to leave, threatened to kill her or "something worse," and attempted to rape her.  She recounted that he was arrested on November 24, 2017, after he hit her in the face in the presence of her teenage daughter and pulled out wads of her hair.  She also asserted a July 2015 incident in which she sustained a black eye, as well as bruises on her arms and legs.  The court issued a temporary restraining order ("TRO"), which directed Lonnie to stay 100 yards from her residence and ordered him to show cause on April 4, 2018, why the TRO should not be made a protective order.  Following a hearing on April 4, 2018, the trial court signed a protective order which was effective for six months.

In the meantime, on March 29, 2018, Rebecca filed a petition for divorce, pursuant to La C.C. art. 103(4) or, alternatively, La. C.C. art. 103(5) or La. C.C. art. 102. She alleged that she and Lonnie separated on November 24, 2017, after his arrest for domestic abuse battery and that they had not reconciled. She further alleged that she was without fault in the causes giving rise to the divorce. She specifically sought reasonable spousal support under the domestic abuse provisions of La. R.S. 9:327 and La. C.C. art. 112(B) and (D). The trial court issued an ex parte order directing Lonnie to produce a variety of financial records, including all documentation of earnings from 2015 to 2018. Additionally, he was ordered to produce documents for 2015 to 2017, which included: W-2 and 1099 forms; state and federal tax returns, individually and for any business, firm or association from which he derived any pecuniary interest; bank statements, cancelled checks and deposit slips.[1]

Trial was held on June 26, 2018. Both parties testified. As to the domestic abuse she suffered at the hands of her husband, Rebecca testified consistently with the allegations of abuse in her petition for protection from abuse. As to financial matters, Rebecca introduced into evidence an affidavit asserting monthly expenses of $3,195. She testified that she was 56 years old and had not worked for four years, which included the duration of her marriage to Lonnie. She obtained a college degree from LSU in science and general studies in 1987. Her last employment was for Adult Protective Services for the City of Roanoke, Virginia, and she earned $36,000 a year.

---

[1] The record indicates that Lonnie failed to produce all of the requested financial information and that the few exhibits pertaining to Lonnie's income that were admitted at trial were obtained from Rebecca.

2

Her work experience was determining Medicaid and food stamp eligibility; she also had worked in personal lines insurance. She testified that she currently had no income but was seeking employment and recently had been on two job interviews. She was living in a house owned by her mother, who resided in an assisted-living facility. While Rebecca paid no rent or mortgage, she paid the utilities, which were in her name, and house-related expenses, such as property taxes and insurance. Her teenage daughter was also on her cell phone plan. She acknowledged that she had inherited $160,000 from her father's estate. The date of the inheritance was unclear. However, some of it was expended during the marriage and, at the time of trial, about $80,000 was left.

During cross-examination, Rebecca testified that the facts alleged in the protective order were true. She denied that Lonnie told her during the March 2018 incident that he had hidden her phone and wallet because she was drunk and he didn't want her to get a DUI. She testified that he told her he hid them because he did not want her to call the police. She also stated that she had her car keys in her skirt pocket. Rebecca denied that she had moved back in and was living with Lonnie at the time of this incident.

In his testimony, Lonnie admitted that, in June 2018, he pled guilty to a reduced charge of simple battery arising from the November 2017 incident which led to the parties' separation. He testified that he made about $35,000 per year; his 2017 W-2 for a house remodeling company called Wood Shapers showed an income of $34,893.75. He stated that he made $26 per hour and that his weekly hours varied; the week before the trial, he had worked only 26 hours. Lonnie testified that he also received about $300 per month in gas royalties from a family partnership/trust account. In 2017, the

trust (which he shared with two siblings) produced additional income of about $120,000 due to a land sale. A 2017 K-1 schedule showed he received $44,665. He also earned revenue from raising and selling cows. He testified at trial that he currently owned 30 cows. In 2017, he sold 12 to 15 calves, for which he received about $600 apiece. However, he stated that there were expenses related to their maintenance; he estimated his average profit per cow was $200, but it varied. Lonnie testified that he made a total of about $82,000 in 2017.

At the conclusion of evidence, the trial court granted Rebecca a divorce from Lonnie based upon the domestic abuse. The community was terminated retroactively to the date of filing of the divorce petition. The court issued a permanent injunction against Lonnie on behalf of Rebecca, pursuant to La. R.S. 9:366 and La. R.S. 46:2136.2.

The trial court ordered Lonnie to pay Rebecca monthly spousal support of $925, pursuant to La. R.S. 9:327 and La C.C. art. 112(B) and (D).[2] The trial court reached that sum as follows:

> The issue of spousal support is a little more complicated as far as trying to find out whether – I think using $80,000 for the year 2017 would be inappropriate, because I do think he had extra money. But I also think using $33,000 a year is probably under that. I think, sir, your cows and your working in that probably produce a little more. What I really wanted to do is see the income tax return to see what was reported there, but I don't have that. I only have the two returns – the W2 from Wood Shapers and the [Schedule K-1 from the family partnership/trust], but not your return.
>
> But bottom line is I'm going to set . . . spousal support . . . at $1,000 per month. That's about a third of what I think your income is. I think her list of wanting $3,000 a month is excessive, and there [were] expenses there that you say that are

_____

[2] We note that the court minutes incorrectly recite the amount awarded as $1,000 per month. Consequently, we order that the court minutes be amended to reflect the award of $925 per month for final periodic spousal support.

4

shared somewhat with your mother. So I didn't give anything for shelter. If she has to move out, that amount would go up. But using her money for food and utilities and her paying part of that would be somewhere in the neighborhood of – let's see. Let me do that one more time.
. . .
Hold on. I want to check that figure before I say it. I may have made a mistake on my adding. I did. I'm going to set [spousal support] at $925 a month. That's including food and the utilities.

Judgment was signed July 19, 2018.

Lonnie filed a motion for a suspensive appeal, which the trial court granted.[3] His contentions on appeal are that the trial court erred in (1) not specifying the factual basis for its support award, and (2) granting Rebecca permanent, lifetime spousal support of $925 per month. Neither has merit.

## LAW

### *Statutes and Articles*

At the time the petition was filed, La. C.C. art. 103 provided, in relevant part:

Except in the case of a covenant marriage, a divorce shall be granted on the petition of a spouse upon proof that:
. . .
(4) During the marriage, the other spouse physically or sexually abused the spouse seeking divorce or a child of one of the spouses, regardless of whether the other spouse was prosecuted for the act of abuse.
(5) After a contradictory hearing or consent decree, a protective order or an injunction was issued during the marriage, in accordance with law, against the other spouse to protect the spouse seeking the divorce or a child of one of the spouses from abuse.

---

[3] In her brief, Rebecca asserted that Lonnie has not paid any support ordered by the judgment. We note that La. C.C.P. art. 3943 provides that an appeal from a judgment awarding support of a person "shall not suspend execution of the judgment insofar as the judgment relates to . . . support."

An amendment, which was effective August 1, 2018, deleted "in accordance with law" in Subparagraph 5 and added a Revision Comment stating the protective order could be criminal or civil. See Acts 2018, No. 265.

La. C.C. art. 112 was also amended by that same Act. At the time of the filing of the petition and the June 2018 trial, La. C.C. art. 112 stated:

A. When a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph C of this Article.

B. When a spouse has not been at fault prior to the filing of a petition for divorce and the court determines that party was the victim of domestic abuse committed during the marriage by the other party, that spouse shall be awarded final periodic support or a lump sum award, at the discretion of the court, in accordance with Paragraph C of this Article.

C. The court shall consider all relevant factors in determining the amount and duration of final support, including:
(1) The income and means of the parties, including the liquidity of such means.
(2) The financial obligations of the parties, including any interim allowance or final child support obligation.
(3) The earning capacity of the parties.
(4) The effect of custody of children upon a party's earning capacity.
(5) The time necessary for the claimant to acquire appropriate education, training, or employment.
(6) The health and age of the parties.
(7) The duration of the marriage.
(8) The tax consequences to either or both parties.
(9) The existence, effect, and duration of any act of domestic abuse committed by the other spouse upon the claimant, regardless of whether the other spouse was prosecuted for the act of domestic violence.

D. The sum awarded under this Article shall not exceed one-third of the obligor's net income; however, where support is awarded pursuant to Paragraph B of this Article, the sum awarded may exceed one-third of the obligor's net income.

Effective August 1, 2018, the article now states:

A. When a spouse has not been at fault prior to the filing of a petition for divorce and is in need of support, based on the needs of that party and the ability of the other party to pay, that spouse may be awarded final periodic support in accordance with Paragraph B of this Article.

B. The court shall consider all relevant factors in determining the amount and duration of final support, including:
(1) The income and means of the parties, including the liquidity of such means.
(2) The financial obligations of the parties, including any interim allowance or final child support obligation.
(3) The earning capacity of the parties.
(4) The effect of custody of children upon a party's earning capacity.
(5) The time necessary for the claimant to acquire appropriate education, training, or employment.
(6) The health and age of the parties.
(7) The duration of the marriage.
(8) The tax consequences to either or both parties.
(9) The existence, effect, and duration of any act of domestic abuse committed by the other spouse upon the claimant or a child of one of the spouses, regardless of whether the other spouse was prosecuted for the act of domestic violence.

C. When a spouse is awarded a judgment of divorce pursuant to Article 103(2), (3), (4), or (5), or when the court determines that a party or a child of one of the spouses was the victim of domestic abuse committed by the other party during the marriage, that spouse is presumed to be entitled to final periodic support.

D. The sum awarded under this Article shall not exceed one-third of the obligor's net income. Nevertheless, when support is awarded after a judgment of divorce is rendered pursuant to Article 103(4) or (5), or when the court determines that a party or a child of one of the spouses was the victim of domestic abuse committed by the other party during the marriage, the sum awarded may exceed one-third of the obligor's net income and may be awarded as a lump sum.

The 2018 Revision Comments provide, in relevant part:

(a) The 2018 revision is intended to clarify the relevance of need, ability to pay, and pre-filing fault to spousal support in the domestic violence and fault-based divorce context. Victims of domestic violence and others who obtain fault-based divorces benefit from a presumption of entitlement to final periodic support, but that presumption may be overcome by evidence regarding need, ability to pay, or pre-filing fault. Likewise, the court remains obligated to consider the factors set

out in Paragraph B of this Article in determining whether support is appropriate when the claimant has obtained a fault-based divorce or is a victim of domestic violence.

La. R.S. 9:327(A) states:

In awarding final spousal support pursuant to Civil Code Article 112(B), the court shall consider any criminal conviction of the obligor spouse for an offense committed against the claimant spouse during the course of the marriage.

### *Jurisprudence*

The basic tests for the amount of spousal support are the needs of the claimant spouse and the other spouse's ability to pay. *Shirley v. Shirley*, 48,635 (La. App. 2 Cir. 10/16/13), 127 So. 3d 935.

Final periodic spousal support, formerly known as permanent alimony, is limited to an amount sufficient for maintenance as opposed to continuing an accustomed style of living. *Richards v. Richards*, 49,260 (La. App. 2 Cir. 8/13/14), 147 So. 3d 800; *King v. King*, 48,881 (La. App. 2 Cir. 2/26/14), 136 So. 3d 941. Maintenance includes the basic necessities of life, such as food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance, and income tax liability generated by alimony payments. *Stowe v. Stowe*, 49,596 (La. App. 2 Cir. 3/4/15), 162 So. 3d 638; *Richards v. Richards*, *supra*. Maintenance is broader than merely food, shelter, and clothing. *McClanahan v. McClanahan*, 14-670 (La. App. 5 Cir. 3/25/15), 169 So. 3d 587. The claimant spouse does not need to prove necessitous circumstances. *Stowe v. Stowe*, *supra*; *King v. King*, *supra*.

While the trial court may restrict final periodic spousal support by a term, it is not required to do so. *Anderson v. Anderson*, 48,027 (La. App. 2 Cir. 5/15/13), 117 So. 3d 208; *Faucheux v. Faucheux*, 11-939 (La. App. 5 Cir. 3/27/12), 91 So. 3d 1119. An award of final periodic spousal support

may be modified if the circumstances of either party materially change and shall be terminated if it becomes unnecessary. La. C.C. art. 114. Further, the obligation is extinguished if the spouse receiving support remarries or cohabits in the manner of a married person. La. C.C. art. 115. *Harmon v. Harmon*, 2012-580 (La. App. 3 Cir. 11/7/12), 101 So. 3d 1122.

The parties' earning capacity is one of several factors that must be considered in determining the amount of final spousal support owed. La. C.C. art. 112. A spouse is not required to take employment of any nature immediately following divorce. Difficulty in finding employment suitable for the spouse's age, training, and ability is a proper consideration. *Anderson v. Anderson*, *supra*.

There is no exact formula or rule for deciding whether and to what extent a spouse claiming final periodic support must deplete her assets. *Anderson v. Anderson*, *supra*; *Patton v. Patton*, 37,401 (La. App. 2 Cir. 9/24/03), 856 So. 2d 56. A support claimant is not required to deplete assets entirely, but may be required to deplete liquid assets to some extent, before being entitled to support payments. However, a spouse is not required to sell nonliquid assets in order to support himself or herself. *Faltynowicz v. Faltynowicz*, 30,605 (La. App. 2 Cir. 6/24/98), 715 So. 2d 90. Courts must apply a "rule of reasonableness" in light of such factors as the value and liquidity of the assets; the ages and the mental and physical health of the parties; their other financial responsibilities; and their relative ability, education and work experience. *Patton v. Patton*, *supra*; *Faltynowicz v. Faltynowicz*, *supra*. The court must be cautious of the probable long-term effects when contemplating depletion of assets. *Drury v. Drury*, 38,951 (La. App. 2 Cir. 9/22/04), 883 So. 2d 465.

9

The trial court is vested with great discretion in making final periodic support determinations, and its judgment will not be disturbed absent a manifest abuse of discretion. *Shirley v. Shirley*, *supra*.

## DISCUSSION

At the time of trial, La. C.C. art. 112(B) mandated an award of final periodic spousal support if the spouse requesting it was not at fault prior to the filing of the divorce petition and was determined to be the victim of domestic abuse committed during the marriage by the other party. The court was to set the amount and duration pursuant to relevant factors, including those listed in La. C.C. art. 112(C). While the sum awarded ordinarily could not exceed one-third of the obligor's net income, it could if the award was made to a victim of domestic abuse. La. C.C. art. 112(D).

The record shows that Rebecca established her entitlement to final periodic spousal support through her trial testimony. Pursuant to La. R.S. 9:327(A), the trial court also had the benefit of Lonnie's criminal conviction for the November 2017 incident.

In setting the amount of spousal support, the trial court found Rebecca's listed expenses excessive and specified that it was restricting the amount of its award to food and utilities. Our review of the record indicates that the trial court utilized the amounts given by Rebecca on her income and expense affidavit for groceries ($500) and utilities, i.e., gas ($100), electricity ($250) and water ($75), for a total of $925.[4] The trial court also

---

[4] This computation also disproves Lonnie's claim that the trial court merely based its award on its perception of what amounted to one-third of his income. We note that, in its oral reasons for judgment, the trial court expressed its frustration with Lonnie's failure to produce his income tax returns, an action which hindered its determination of Lonnie's ability to pay. We further observe that Lonnie's testimony as to his income was vague and self-serving. Nonetheless, the trial court was able to use the information available to it to make a fair determination of Lonnie's recent income.

found that, because Rebecca was living in her mother's house, an award for shelter was not warranted, but it acknowledged that this might change in the future if she had to move. The trial court's failure to include other items to which she would have been entitled for her maintenance (i.e., clothing, transportation, medications) demonstrates that it took into consideration other factors, including the fact that she still had approximately half of her inheritance from her father. However, there is no exact formula as to what extent a support claimant is required to deplete assets. We find that the trial court properly applied a "rule of reasonableness," as set forth in the jurisprudence.

We find no merit to Lonnie's claim that the trial court made a permanent, lifetime award to Rebecca and that it should have placed a time limit on the award of spousal support. The jurisprudence has established that such a time restriction is not required. Since spousal support awards are never final, Lonnie is entitled to seek modification pursuant to La. C.C. arts. 114 and 115 if the circumstances so merit.

Lonnie argues that he is entitled to benefit from the 2018 amendments to La. C.C. art. 112 that went into effect weeks after the trial, which changed an abused spouse's mandatory entitlement to final periodic spousal support to a presumption of entitlement. We find no merit to this contention. As explained by 2018 Revision Comment (a), the amendment was intended to "clarify" the relevance of need and ability to pay, matters to which the trial court in the instant case appears to have given due consideration.

Based on the foregoing, we find that the trial court did not abuse its great discretion in granting final periodic spousal support in favor of Rebecca in the amount of $925 per month.

## CONCLUSION

We affirm the trial court judgment awarding Rebecca Leigh Bloxom final periodic spousal support of $925 per month. Costs of this appeal are assessed against the appellant, Lonnie Keith Bloxom.

**AFFIRMED.**