CARAWAY, J.
| iThis controversy arose during the time that a financially distressed proprietary business school was being acquired by ap-pellees. Appellees entered into an agreement with the mortgage creditor of the school in the form of a six-month lease attempting to stave off a possible foreclosure so that the transfer of the school’s ownership might be completed. Appellees eventually failed to make the final two monthly payments for the lease, and the creditor instituted this suit for those rents. Appellees made a third party demand upon the owner of the school and his business entities involved in the business. After trial, the trial court rendered judgment in appellees’ favor denying the creditor’s rent claim and granting appellees a $20,000 judgment against the owner of the school. For the following reasons, we reverse the trial court’s rulings.

Facts

The American School of Business is a proprietary business school located at 702 Professional Drive North in Shreveport. In 2007, the school was owned by America’s Business School, Inc. (“ABS”), while the immovable property on which the school operated was owned by America’s Properties, Inc. (“AP”). The sole shareholder of both corporations was Charles Harris, a Maryland resident and one of the appellants. The immovable property was burdened with a mortgage held by the other appellant, the plaintiff, Sheets Family Partners-Louisiana, Ltd. (“Sheets”).[1]
| gDavid and Linda Sue Hale gratuitously ran the school in Harris’s absence. Due to Harris’s illness, he requested that David Hale pursue a buyer for the school in 2007. Hale approached Bishop Larry Brandon about a sale. Bishop Brandon serves as the Senior Pastor of Praise Temple Full Gospel Baptist Church in Shreveport and as the Regional Bishop for the Reforma *966 tion and Full Gospel Baptist Church Fellowship.
On July 30, 2007, ABS sold “all of the assets, movable, tangible and intangible” of the business school to Inner City Refuge Economic Development Corporation (“Inner City”). Bishop Brandon is the president of Inner City. The sale was made for the price of:
1) $10,000 in cash paid at the time of execution of this document.
2) Full satisfaction of the balance owing on a Forty-five Thousand and No/100 Dollars ($45,000) line of Credit with the Regions Bank, Shreveport, Louisiana; full satisfaction on the balance of an equipment lease with the Regions Bank, Shreveport, Louisiana;
3) Assumption of those outstanding obligations made in the normal course of business at the time of transfer; and
4) Other good and valuable consideration.
The $10,000 payment was made by check drawn on Praise Temple Full Gospel Baptist Church, Inc., general fund account, and dated July 30, 2007. The $10,000 was deposited in the American School of Business General Fund, for use by Inner City as they worked toward obtaining licensing approval required by the State of Louisiana. A memo on the check explained that the money was a loan to Inner City by Praise Temple for a business acquisition.
In August of 2007, Bishop Brandon and David Hale traveled to Baton Rouge to meet with the Louisiana Board of Regents, Proprietary Schools Section, the licensing agency. They submitted a draft of a change of 1 ¡¡ownership form, a requirement in the licensing process. Bishop Brandon was informed that it would be necessary to obtain updated audited financial statements for both American School of Business and Inner City. On August 17, 2007, Inner City obtained a certificate of occupancy for the business school and by October of 2007 had engaged the services of a local accounting firm to prepare the required financial statements. At that time, however, the accounting firm was unable to prepare the necessary financial information. Bishop Brandon also unsuccessfully attempted to obtain a required bond for the school from a local bonding company.
There were two transactions regarding AP’s ownership of the immovable property where the school was located. On August 10, 2007, a $10,000 check payable to AP was drawn on Praise Temple’s general fund account. The check notation described a “Property Acquisition Down Payment” for the purchase of the property at 702 Professional Drive North. Later, by a February 1, 2008 Bill of Sale, AP transferred “3000 shares of common stock $.01 par value per share of America’s Properties, Inc.,” or “100% of the authorized and outstanding stock of America’s Properties, Inc.,” to Brandon Group International, LLC (“Brandon Group”), a second corporation established by Bishop Brandon for the purchase of the property. On that same day, Harris sent notice to Brandon Group of his resignation as a member of the board of directors, the office of President/Secretary and registered agent of AP.
In March of 2008, Inner City hired two consultants to assist with the transition of the school into the control of Inner City. John Lewis and Ora|4Bedford[2] spent time with David and Linda Sue Hale at the school learning about the day-to-day activities and administration of the facility.
On April 3, 2008, Sheets, represented by Jerry Wood, entered into a March 31, 2008 “letter agreement” (hereinafter the *967 “Lease”) with Inner City. In this lease agreement, Inner City agreed to lease the immovable property on which the school operated and on which Sheets had its mortgage. The Lease noted that the mortgage was “currently in default and Sheets Family Partners is in the process of reacquiring ownership of the Property.” Sheets agreed to lease to Inner City:
[T]he buildings and improvements located at 702 Professional Drive North, Shreveport, Louisiana, for the operation of a proprietary school and for a rental of Seven Thousand and No/100 Dollars ($7,000.00) per month payable in advance on the first day of each month for a period of six (6) months, beginning April 1, 2008, through September 30, 2008, both inclusive. It is understood and agreed that:
(a) Lessee accepts the buildings and improvements in their present condition “as is” and will keep the buildings and improvements in good condition throughout the term of this lease and make all necessary repairs at its cost and expense;
(b) Lessee will pay all utilities during the term of this Lease; and
(c) Lessee will pay one-twelfth (1/12) of the annual premiums of Three Thousand Nine Hundred Ninety And No/100 Dollars ($3,990.00) being paid annually by Sheets Family Partners, or Three Hundred Thirty-Two And 50/100 dollars ($332.50) per month, as premiums for fire and extended coverage and public liability insurance on the Property each month during the term of this Lease.
The Lease required Inner City to pay $14,665 at the time of its execution, which represented the rent for the first and last months of the Lease. An acceleration clause was provided in the event of Inner City’s failure to pay rent timely. The Lease included these final two clauses:
| ^Lessee’s obligations under this lease are personally guaranteed by Bishop Larry L. Brandon, who hereby binds himself in solido with Lessee for the performance of Lessee’s obligations.
It is expressly understood and agreed that Lessee Bishop Larry L. Brandon will not become personally liable for the obligations of America’s Properties, Inc., and Charles Harris, Jr. under the aforesaid Note and Mortgage by executing and performing this Lease and by occupying the Property pursuant to this Lease.
The parties have executed this Lease with the expectation that a long-term lease will be executed by the parties prior to the expiration of this Lease.
In accordance with the Lease, Inner City paid Sheets the sum of $14,665 on April 3, 2008. Inner City also paid the May and June rental payments.
In May of 2008, Inner City sought a second audited financial statement of its business. The audit report did not include American School of Business in Inner City’s assets. Inner City had no license to operate a proprietary school and the accounting firm considered that the failure of certain conditions indicated that the sale of the assets had not been completed.
In early July of 2008, according to Lewis, David Hale informed him and Bedford that the sale of the business was not going to happen and there was no need for them to remain or return to the school. Lewis further testified that no representative of Inner City returned to the school after that time and Inner City ceased paying rent. David Hale denied that these facts occurred.
Through Wood’s testimony, the record shows that the immovable property was conveyed back, by a dation en paiement, to Sheets sometime | fiin 2009 or 2010. No *968 copy of the dation en paiement was submitted into evidence. In a supplemental brief submitted to the court, Inner City contends that during 2009 or 2010, American School of Business was sold by Charles Harris to a third party purchaser and that the immovable property was transferred to Sheets by “America’s Properties, Inc./Charles Harris” through a dation en paiement. However, no testimony or evidence establishes these facts or demonstrates how Harris regained ownership of the school and the encumbered property from Inner City and Brandon Group.
On July 11, 2008, Sheets sent a demand letter to Inner City seeking payment of the July rent or acceleration of the remaining balance on the lease in the amount of $14,665. When no further payments materialized, Sheets filed this suit against Inner City and Bishop Brandon on July 21, 2008, seeking the July and August lease payments. By amended answer to the action, Inner City and Bishop Brandon raised the defense of Sheets’ breach of the Lease resulting' from the interruption of Inner City’s peaceful possession of the property in July 2008. Inner City and Bishop Brandon also filed a third party demand against ABS, AP, Linda Sue Hale, and Charles Harris.
Trial of the case occurred in May 2011. After hearing the testimony of witnesses and considering the documentary evidence, the court granted an involuntary dismissal in favor of Linda Sue Hale, dismissing her from the action on May 19, 2011. On the main demand, the court ruled in favor of Inner City and Bishop Brandon, rejecting Sheets’ claim for unpaid rent. On |7the third party demands, the court ruled in favor of Inner City and Bishop Brandon granting judgment against Harris only for the sum of $20,000. The judgment failed to dispose of the third party claims against ABS and AP.
In oral reasons for judgment the court noted as follows:
This is a confusing and convoluted case upon which the plaintiff, Sheets has the burden of proof. When the lease was entered Sheets did not own the property; Charles Harris, and/or his business entity owned it and Sheets was in the process of reacquiring it as the holder of a promissory note and as mortgagee. In July and August, 2007, Inner City and Bishop Brandon ultimately paid $20,000 to Americas Properties, Inc., corporations in which Charles Harris owned 100% of the stock, and Inner City and Bishop Brandon paid Sheets $29,330.00; thus a total of $49,330.00 was paid by Inner City and Bishop Brandon. In return, Inner City and Bishop Brandon received what appears to be worthless stock and little, if any, use of the leased premises.... In light of the most peculiar circumstances of this case, the Court concludes that Sheets has not carried its burden of proof as to Inner City and Bishop Brandon. The Court believes that Bishop Brandon and Inner City were constructively dispossessed and disturbed of the peaceful possession of the leased premises by the actions of the Hales, both of whom curiously work without compensation and maintain an unusual loyalty to Charles Harris as well as Sheets. In light of the substantial amount of money paid to Harris for which Bishop Brandon received little or no value and in light of the dation en paiement from Harris and/or his corporation to Sheets extinguishing the obligation, the Court concludes that under these unusual circumstances it would be an injustice to render judgment against Bishop Brandon and Inner City. Stated differently, the Court finds Bishop Brandon credible and believes he was an innocent victim in a bizarre transaction. Accordingly on *969 the main demand, a formal Judgment shall be rendered in favor of Inner City and Bishop Brandon against Sheets.
On the third party demand, the Court stated as follows:
[T]he court heard testimony from Bishop Brandon but, because Mr. Harris purposely absented himself from these proceedings, the Court received no evidence from the third party defendants (with the exception of Mrs. Hale, who is dismissed). There is sufficient unrebut-ted and unchallenged evidence from Inner City and Bishop Brandon entitling these third party plaintiffs to judgment against third party defendant Charles Harris. Although counsel for Inner City and Bishop Brandon have sought the amount of $49,330.00, the Court is of the view that third party plaintiffs are entitled to $20,000.00, | ^representing the total amount paid by third party plaintiffs to Mr. Harris.
Appeal of this matter by both Harris and Sheets ensued.

Discussion

I.
On appeal, Sheets argues that the trial court erred in concluding that the interruption of Inner City’s peaceable possession of the leased property amounted to a breach of the Lease, defeating Sheets’ claim for unpaid rent. Sheets asserts that Inner City along with the other Brandon-related entities owned the school and the property encumbered by its mortgage and could not be disturbed in possession of the school under the facts asserted by Inner City.
The lessor is bound to deliver the thing to the lessee, to maintain the thing in a condition suitable for the purpose of which it was leased; and to protect the lessee’s peaceful possession for the duration of the lease. La. C.C. art. 2682. A lease of a thing that does not belong to the lessor may nevertheless be binding on the parties. La. C.C. art. 2674. The lessor warrants the lessee’s peaceful possession of the leased thing against any disturbance caused by a person who asserts ownership, or right. to possession of, or any other right in the thing. La. C.C. art. 2700. The Lessor is bound to take all steps necessary to protect the lessee’s possession against any disturbance, as soon as the lessor is informed of such a disturbance. If the lessor fails to do so, the lessee may, without prejudice to his rights against the lessor, file any appropriate action against the person who caused the disturbance. La. C.C. art. 2701. The lessee is bound to 19notify the lessor -without delay when his possession has been disturbed by a third person. La. C.C. art. 2688.
The term disturbance of possession of the lessee as set forth in Civil Code Articles 2700 and 2701 is intended to have the same meaning as that set forth in La. C.C.P. art. 3659 which states in relevant part as follows:
A disturbance in fact is an eviction, or any other physical act which prevents the possessor of immovable property or of a real right therein from enjoying his possession quietly, or which throws any obstacle in the way of that enjoyment.
See Revision Comments, La. C.C. art. 2700; McCurdy v. Bloom’s Inc., 39,854 (La.App.2d Cir.6/29/05), 907 So.2d 896.
The parties have presented the controversy concerning the Sheets/Inner City agreement in the context of the law of lease. The trial court correctly described the parties’ dealings as somewhat “convoluted.” Its ruling placed some emphasis on the fact that Sheets did not own the property at the time of the Lease. The Lease stated that Sheets was “in the process of reacquiring ownership of the Property.” There was no evidence of any actual foreclosure and no copy of Sheets’ *970 alleged mortgage was produced. However, Sheets’ mortgagor status as discussed in the Lease is an accepted fact by the parties.
With Sheets’ assertion of the pending foreclosure as stated in the Lease, the agreement shows that its substance also involved aspects of a forbearance agreement, making the contract somewhat inno-minate and not merely a lease. See La. C.C. art. 1914. At the time of the execution of the Lease, Bishop Brandon and Inner City either owned and controlled, or had the right to control, all movable assets of the school and the school land | ^subject to Sheets’ rights as the mortgage creditor. Bishop Brandon bound himself personally to the obligations of the Lease. There was no dispute raised in this action by Inner City, Bishop Brandon, or the corporations controlled by Bishop Brandon, AP and Brandon Group, that Sheets violated its rights as creditor in extending forbearance from foreclosure in exchange for the obligation for the rental payments under the Lease. We therefore do not find that this contract between the parties is subject to attack because Sheets did not own the property. From the principles for lease which the parties assert, Civil Code Article 2674, supra, also confirms that the agreement was binding.
Turning to the issue of the disturbance of Inner City’s possession under the Lease, we find that Inner City’s assertion that Hale prevented its possession and continued operation of the school to be insufficient to nullify its obligations to Sheets under the Lease. Regardless of any statements made by David Hale in early July 2008 informing Inner City’s representative that the “deal” for the school would not materialize, the transfer of the assets of the school had already occurred. Harris, who controlled the school through his two corporations, ABS and AP, had conveyed his control and ownership to Inner City and Brandon Group in 2007 and early 2008 before Hale’s alleged eviction statements to Lewis.[3] There was no showing that despite Harris’s transfer of the school, he somehow retained legal control or ownership over the property. There was | „no evidence of any communication by Harris to Inner City or Bishop Brandon to cease Inner City’s involvement with the school. Most importantly, there is no evidence demonstrating that Sheets acted through either Hale or Harris in July 2008 to dispossess Inner City of its occupancy rights to the property.
At best, the evidence of July 2008 reveals difficulty in the transition of the school into Inner City’s complete control because of nonapproval by the state licensing board and Hale’s actions. This difficulty involved Inner City and Bishop Brandon’s effort in acquiring the school, which was a transaction separate from Sheets’ agreement for forbearance. Inner City never asserted to Sheets that the transition problems with its acquisition of the school amounted to its eviction from the property. The uncertainty of that transfer process was present upon Inner City’s execution of the Lease and its receipt of Sheets’ forbearance. That uncertainty cannot be now asserted well after the filing of Sheets’ action as a defense to Inner City’s obligations to Sheets. La. C.C. art. 2688.
Accordingly, we reverse the trial court’s ruling that Sheets breached the Lease. Any statements by David Hale did not amount to a dispossession of Inner City’s rights to the school properties as neither Hale nor Harris had a legal right to occu *971 pancy and possession of the property. Sheets’ claim for the remaining rents under the Lease is granted.
_b II.
Harris appealed the trial court’s $20,000 judgment against him in favor of Inner City and Bishop Brandon (hereinafter collectively the “Third Party Plaintiffs”).
Third Party Plaintiffs filed a third party demand against ABS, AP, Linda Sue Hale and Charles Harris on the grounds of unjust enrichment. Third Party Plaintiffs initially sought repayment of $29,330, representing taxes, rents and insurance paid by them on behalf of the defendants during the months of April, May, June and July of 2008. Third Party Plaintiffs alleged that the property was leased from Sheets “only as an accommodation” and “in reliance on the promises and representations” of the third party defendants to “eventually turn over operation of the business school, and complete the sale of the school” to Third Party Plaintiffs. Third Party Plaintiffs alleged that they would not have made the lease payments to Sheets except for their reliance on the representations of the third party defendants. They claimed that those defendants were unjustly enriched as a result of “any and all payments made on its behalf’ by Third Party Plaintiffs. Third Party Plaintiffs alleged that Charles Harris personally benefited from the rental payments “by retaining a tenant in his property and receiving payment of a portion of the taxes and insurance he is required to maintain on the property.”
In a post-trial brief, Third Party Plaintiffs claimed for the first time entitlement to an additional $20,000, representing the two $10,000 payments made to ABS and AP. Specifically, they asserted in brief that 11s“Mr. Charles L. Harris Jr. and his corporations, America’s Properties Inc. and America’s Business School, Inc. received Twenty Thousand Dollars ($20,-000.00)” from Inner City, and Harris was “enriched by this amount at the expense” of Inner City. Third Party Plaintiffs argued that in return for the $20,000 payments, Inner City was “basically allowed to shadow Mr. David Hale and attempt to meet his demands” until the transaction was terminated.
The provisions of La. C.C. art. 2298 read as follows:
A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term “without cause” is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law. The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.
The amount of compensation due is measured by the extent to which one has been enriched or the other has been impoverished, whichever is less.
The extent of the enrichment or impoverishment is measured as of the time the suit is brought or, according to the circumstances, as of the time the judgment is rendered.
Prior to the enactment of the above article, the Louisiana Supreme Court established five requirements for proving unjust enrichment, as follows: (1) there must be an enrichment; (2) there must be an impoverishment; (3) there must be a connection between the enrichment and the resulting impoverishment; (4) there must be an absence of justification or cause for the enrichment and impoverishment; and (5) there must be no other remedy at law available to the plaintiff. Hall v. James, 43,263 (La.App.2d Cir.6/4/08), 986 So.2d 817. See Industrial Companies, Inc. v. *972 Durbin, 02-0665 (La.1/28/03), 837 So.2d 1207.
The trial court’s ruling appears to have rejected the Third Party Plaintiffs’ claim for the amounts paid under the Lease, totaling $29,330. In any event, we do not find that these payments for rent and taxes for which Third Party Plaintiffs became contractually obligated to Sheets are recoverable under our unjust enrichment law. There was a contractual cause for the Third Party Plaintiffs’ impoverishment. The enrichment to the school resulting from Sheets’ six-month forbearance was a direct benefit to Inner City and Bishop Brandon who were the owners of the school assets and land.
To the extent that the $20,000 represents the payments made for Inner City’s acquisition of the school assets from ABS and Brandon Group’s acquisition of AP, any claim for the breach of those two purchase contracts was outside the pleadings, and there was no expansion of the pleadings at trial by evidence specifically asserting such breach. Moreover, ABS and AP, who were made third party defendants, were not cast in judgment. When a judgment is silent as to a claim or demand, it is presumed that the claim or demand has been denied. Bell Foundry Co. v. Lonnie McCurry’s Four Wheel Drive Center, Inc., 46,553 (La.App.2d Cir.10/5/11), 75 So.3d 529, writ denied, 11-2467 (La.1/20/12), 78 So.3d 145; Action Revenue Recovery, L.L.C. v. eBusiness Group, L.L.C., 44,607 (La.App.2d Cir.8/19/09), 17 So.3d 999. Because no appeal of that portion of the judgment has been taken, it is final.
| ^Accordingly, we do not find that Third Party Plaintiffs are entitled to recovery from Harris under a theory of unjust enrichment. The judgment against him is reversed.

Conclusion

For the foregoing reasons, the judgment of the trial court is reversed. Judgment is rendered in favor of Sheets on the main demand for the full sum of $14,665, together with legal interest as provided by law. Costs of this appeal are assessed to Inner City and Bishop Brandon. ■
REVERSED AND RENDERED.

. The testimony indicates that the general partner of Sheets sold the business school to ABS in 2002.

. In Inner City documentation included in the record, Bedford was referred to as the Executive Director of the American School of Business.

. The trial court’s written ruling indicated that when the Lease was executed in April of 2008, Harris or his businesses owned the school. The record of the earlier transactions is to the contrary.