GARRETT, J.
|,The plaintiff, Mary Ann Richards, appeals from a trial court judgment denying her request for reinstatement of final periodic spousal support. She also contends that the trial court erred in not ruling against her former husband, James Bruce Richards, for his failure to maintain proper medical insurance on their younger daughter. We affirm in part, reverse in part, and render.
FACTS
When Ms. Richards and her former husband divorced, Ms. Richards was found to be free of fault in the breakup of the marriage. In an order setting child support in 1998, Mr. Richards was ordered to either maintain insurance on the parties’ two daughters, Laura and Amy, or pay an additional $129 per month. The exact language in the initial custody plan was as follows:
JAMES BRUCE RICHARDS shall pay the sum of $910.00 per month as child support and shall maintain insurance on the children at a cost of $129.00 per month. During any month that JAMES BRUCE RICHARDS fails to maintain insurance on the children, his child support shall be calculated to be $1,039.00.
In January 1999, Mr. Richards was also ordered to pay $400 per month in spousal support. However, the trial court directed that the spousal support would end if Ms. Richards received Social Security disability (SSI) benefits. The trial court also stipulated that any party could seek amendment in the future if there was a change of circumstances. In August 2009, Ms. Richards’ final periodic spousal support was terminated due to her receipt of SSI benefits. At that time, the amount of the child support 12was $1,300 per month.[1] *803 In May 2011, Mr. Richards made his last payment of child support when his younger daughter, Amy, turned 18 and graduated from high school.
In June 2011, Ms. Richards filed a rule to modify the previous spousal support judgment and for contempt. She sought reinstatement of spousal support. She asserted that this was necessitated by the loss of the monthly child support and her inability to work due to her disability.
Ms. Richards also asserted in her rule that Mr. Richards had stopped paying the $129 for insurance in July 2009, claiming that he had gotten insurance for Amy. However, Ms. Richards alleged that Mr. Richards’ insurer had informed Amy’s medical providers that the insurance was not good in Louisiana and that Amy only had coverage in Massachusetts and Rhode Island.[2] Ms. Richards claimed that she had incurred numerous medical expenses for Amy since June 2009, including a broken arm and dental work. She requested that Mr. Richards be ordered to pay $3,096 ($129 per month from July 2009 to May 2011), plus legal interest, and $129 per month for every month he did not have insurance on the children since October 1998, when he was first ordered to provide insurance or pay $129 per month. Ms. Richards further requested that Mr. Richards be held in contempt and be ordered to pay attorney fees and court costs. In response, |sMr. Richards filed a general denial in which he claimed to have paid hundreds of dollars in dental expenses for Amy without Ms. Richards paying her half.
Following one continuance, the original hearing on the rule was scheduled to be held on November 3, 2011. However, during a pretrial conference, the trial court indicated that it was going to rule that the loss of child support was not a change in circumstances justifying reinstatement of spousal support. In court, the parties entered into stipulations as to some of the basic underlying facts and introduced exhibits such as affidavits pertaining to the parties’ respective expenses and income. No testimony was adduced at that time due to the legal ruling made by the trial court. The medical insurance issue was continued without date, pending action by the appellate court on the spousal support issue. Judgment denying Ms. Richards’ request for final periodic spousal support was signed on November 23, 2011.
The issue was appealed to this court. In September 2012, we ruled that while the loss of child support alone could not carry Ms. Richards’ burden of showing a material change in circumstances, the jurisprudence did not preclude it from being a factor considered by the trial court under the appropriate circumstances. We reversed the trial court judgment and remanded the matter for further consideration. In particular, we noted that from the record before us, we could not discern which expenses between mother and child were shared, why her prior spousal support was terminated, and whether Ms. Richards’ income and expenses had changed |4since the 2009 decree terminating her spousal support. The trial court was directed to decide on remand whether any of the fixed and previously shared expenses should be considered and to give consideration of Ms. Richards’ claim for further support under the overall test of *804 La. C.C. art. 112(B). See Richards v. Richards, 47,492 (La.App.2d Cir.9/20/12), 105 So.3d 77.
Following remand, a hearing was eventually held on January 14, 2013. The parties again stipulated to many of the underlying facts. Additionally, they both testified and submitted affidavits of expenses and income. According to the testimony, Ms. Richards’ sole income was $710 in SSI benefits.[3] At the conclusion of the evidence, the trial court tasked the attorneys with contacting the Social Security Administration (SSA) to find out how an award of spousal support would affect Ms. Richards’ SSI benefits. Both attorneys informed the court by letter that it was their understanding that there would be a dollar for dollar reduction of her benefits. Ms. Richards’ counsel further requested spousal support of $1,750. Mr. Richards’ counsel asserted that, after subtraction of improper expenses, Ms. Richards had only shown monthly needs of $800 to $1,000.
On July 1, 2013, the trial court issued very brief written reasons for judgment which specifically adopted Mr. Richards’ arguments and denied Ms. Richards’ request to reinstate spousal support without explanation or details. It stated that various expenses she claimed were not reasonable and necessary. It noted that some expenses were attributable to both her and her adult daughter. The court found that, after deductions of improper expenses IsCwithout specifying what was improper), Ms. Richards was unable to demonstrate a need for reinstatement of spousal support. A judgment was eventually signed on September 12, 2013. No mention of the insurance issue was made in either the written reasons for judgment or the judgment itself.
With more than three years having passed from the filing of the rule, the matter is again before us on appeal.
FINAL PERIODIC SPOUSAL SUPPORT

Law

A spouse may be awarded final periodic support when he or she has not been at fault and is in need of support, based on the needs of that party and the ability of the other party to pay. A claimant spouse does not need to prove “necessitous circumstances.” Anderson v. Anderson, 48,027 (La.App.2d Cir.5/15/13), 117 So.3d 208; King v. King, 48,881 (La.App.2d Cir.2/26/14), 136 So.3d 941. Final periodic spousal support, formerly known as permanent alimony, is limited to an amount sufficient for maintenance, as opposed to continuing an accustomed style of living. The court shall consider all relevant factors in determining the amount and duration of final support. La. C.C. art. 112; King v. King, supra. Included among the factors that may be considered are the earning capacity of the parties and the health and age of the parties. La. C.C. art. 112.
Maintenance includes the basic necessities of life, such as food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance, and income tax liability generated by alimony | repayments. Jones v. Jones, 38,790 (La.App.2d Cir.6/25/04), 877 So.2d 1061. Depending upon the facts of the case, television and internet services may be considered as necessary items. Anderson v. Anderson, supra; King v. King, supra. Lawn maintenance may also be included. *805 Prestenback v. Prestenback, 2008-0457 (La.App.lst Cir.11/18/08), 9 So.3d 172.
An award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary. La. C.C. art. 114; Richards v. Richards, supra. An award of alimony is never final. Gibbs v. Gibbs, 33,169 (La.App.2d Cir.6/21/00), 764 So.2d 261.
An award for support shall not be modified unless the party seeking the modification shows a material change in circumstances of one of the parties between the time of the previous award and the time of the rule for modification of the award. La. R.S. 9:311(A)(1); Richards v. Richards, supra. The party seeking the modification or termination of support carries the burden of proof that circumstances have changed since the original award. Gilbreath v. Gilbreath, 32,292 (La.App.2d Cir.9/22/99), 743 So.2d 300.
The trial court is vested with much discretion in determining awards of spousal support, and its determinations will not be disturbed absent a clear abuse of discretion. Gremillion v. Gremillion, 39,588 (La.App.2d Cir.4/6/05), 900 So.2d 262.
| ^Evidence
Ms. Richards testified that she is disabled and physically unable to work due to a multitude of health issues, including fibromyalgia, short-term memory loss, mi-tral valve prolapse, and scoliosis. She further testified as to a recent serious downturn in her health — the devastating loss of 20 pounds which reduced her weight to a meager 81 pounds and rendered her even more acutely ill. She had also been recently diagnosed with abdominal adhe-sions. Although she has Medicaid, it does not cover all of her medical expenses, such as prescriptions and doctor’s visits. She explained that not all of her doctors take Medicaid, including her pain specialist. Some of her medicines have increased in cost. As a result, she has accumulated substantial indebtedness to medical care providers and pharmacies.
The original award of spousal support was terminated after she began receiving SSI benefits in 2009. At the time the spousal support was terminated, she was receiving about $250 per month in SSI benefits, plus the child support. After termination of the spousal support, her SSI benefits increased. They were $674 per month in 2011 and $694 per month in 2012. She testified that they had recently increased to $710 per month.
While she is a co-owner with her brother of the house where she and Amy reside, Ms. Richards testified that its condition was so poor it could not pass an inspection for obtaining homeowner insurance and that she could not afford to repair it. She stated that Amy — who was 19 years old and a student at the time of the hearing— helps with some expenses like car repairs. Ms. Richards drives an old 1999 Ford Contour which is in bad |sshape and recently required $900 in repairs. Amy also helps with the utility bills when their services are about to be cut off.
On her January 2013 affidavit, Ms. Richards listed a total income of $710 in SSI benefits. Her total living expenses were given as $1,851.29, plus $257.50 in fixed debt, or total expenses of $2,108.79. As to the shared expenses, such as utilities, Ms. Richards testified that they would be basically the same even if Amy lived elsewhere.
The expenses listed on Ms. Richards’ affidavit, and as explained in her testimony, included the following:

*806
LIVING EXPENSES

Food $300.00
Electricity $150.00
Water and sewage $59.00
Telephone $62.00
Gas $80.00
Cable $57.79
Household Supplies $100.00[4]
Personal Necessities $125.00
Clothing $100.00
Auto Expense & Upkeep $125.00
Auto Insurance $70.00
Medical Care $112.50
Prescriptions $280.00
Lawn Care $70.00
$1,691.29[5]

FIXED DEBT:

Dr. Roneal $10.00
Discover Card ($3,700.00) $100.00
Mitchell’s Pharmacy ($950.00) $25.00
Green Clinic ($300.00) $7.50
Mayfield Chiropractic ($300.00) $5.00
Collection Associates ($106.80) $10.00
| (Attorney Fees ($1,500.00) $100.00
$257.50[6]
TOTAL EXPENSES $1,948.79
However, in brief, Ms. Richards appears to request only the living expenses, not the fixed debt items.
In his affidavit, Mr. Richards listed a gross monthly income of $11,360, a total net monthly income of $7,495, and total expenses of $7,022.67. However, during his testimony, it was revealed that the expenses he listed for himself were actually for his entire family (which included his current wife, who does not work outside the home, and their eight-year-old son) and that some of the monthly expenses he listed (e.g., $100 for alcoholic beverages, $78 for dog veterinarian and medicine, and $460 for vacation) were improperly included. He also admitted that the income information on his affidavit was based on a 40-hour week, not on what he actually makes, which includes considerable overtime. Documentation showed that in the first six months of 2011, he made more than $85,000.

Discussion

The record before us shows an acute and devastating financial need on the part of Ms. Richards, who is clearly in *807 seriously declining health.[7] (Her recent and dramatic weight loss indicates that her condition has worsened since she first sought reinstatement of the final periodic spousal | msupport.) While she was able to limp along with the combined income of her SSI benefits and the child support she received for Amy, the loss of the child support has been financially catastrophic for Ms. Richards.
Contrary to Mr. Richards’ contention and the trial court’s finding, Ms. Richards has shown valid needs in excess of $800 to $1,000 per month. By our count, she has listed reasonable expenses of at least $1,691.29. Careful and painstaking review of these items shows no extravagance. Her poor health necessitates certain of the expenses, such as medical care, lawn care, and cable. See King v. King, supra. Her only monthly income — $710 in SSI benefits — is grossly inadequate to sustain her.
The evidence in the appellate record pertaining to the history of the setting of the child support and alimony is scant and consists mostly of stipulations. However, from what we can glean, it is clear that the alimony and child support were always intertwined.[8] While Ms. Richards’ alimony was stopped after she began to obtain fairly meager SSI benefits, the child support increased. This is noteworthy because, despite one of the parties’ children becoming a major, the child support did not decrease. To the contrary, it remained at $1,300 with only one minor child. Furthermore, the parties expressly stipulated that, in 1999 when Mr. Richards was ordered to pay $400 in spousal support which would terminate if Ms. Richards ^received SSI, it was specified that any party could still seek amendment should there be a change of circumstances in the future.
The loss of child support cannot be the sole reason for reinstituting final periodic spousal support. However, it can be considered as a factor in determining the need for final periodic spousal support in an appropriate case. Richards v. Richards, supra. Under the unique circumstances of the instant case, we find that the loss of the substantial amount of child support, in combination with the serious decline in Ms. Richards’ health, constitutes a material change in circumstances warranting reinstatement of final periodic spousal support.
Having determined Ms. Richards’ need and a change in circumstances, we look to Mr. Richards’ ability to pay. Despite Mr. Richards’ efforts to exaggerate his expenses and underestimate his income, on this record there is no question whatsoever as to his ability to pay.
Based upon the foregoing, we find that the trial court abused its discretion in denying Ms. Richards’ request for reinstatement of final periodic spousal support. We order judgment in favor of Ms. Richards and against Mr. Richards awarding Ms. Richards monthly final periodic spousal support of $1,691.29.[9] The order is *808 made retroactive to January 14, 2013, the date of the hearing on remand. See La. R.S. 9:310(C). We also direct | ^that Mr. Richards be given a credit for the amount of SSI benefits received by Ms. Richards since that date.
INSURANCE
Although the trial court indicated during the hearing that it believed that Mr. Richards had complied with the court order pertaining to Amy’s health insurance, it made no specific ruling on this issue in its written reasons or judgment. When a judgment is silent as to a claim or demand, it is presumed that the claim or demand has been denied. Bell Foundry Co. v. Lonnie McCurry’s Four Wheel Drive Ctr., Inc., 46,553 (La.App.2d Cir.10/5/11), 75 So.3d 529, writ denied, 2011-2467 (La.1/20/12), 78 So.3d 145; Sheets Family Partners-Louisiana, Ltd. v. Inner City Refuge Econ. Dev. Corp., 47,156 (La.App.2d Cir.6/20/12), 94 So.3d 964.
Ms. Richards testified that Mr. Richards stopped paying the $129 per month for Amy’s insurance after the June 2009 payment, telling her that he had insurance coverage on Amy. Ms. Richards produced a May 2010 letter addressed to Amy at her father’s address in Massachusetts stating that she had coverage under an HMO plan “effective 6/1/07 through the present.” However, Ms. Richards testified that Medicaid had to pay the emergency room bill when Amy broke her wrist because the hospital determined that Amy was not eov-ered by any insurance. Ms. Richards further testified that the office of Dr. Brown, an orthopedic surgeon Amy went to see about having a cast put on her wrist, also said she had no insurance coverage. Nonetheless, a 2009 bill for treatment of Amy’s broken wrist shows some | iaHMO/PPO adjustments.[10] Additional documents from the insurer show that Amy was included on her father’s insurance plan and that some of her claims were paid by the insurer. One of the paid claims appears to be from the doctor whose office supposedly said Amy had no coverage.[11]
Also admitted into evidence was a letter dated March 10, 2008, from Mr. Richards to Ms. Richards about an uncovered medical bill of Amy’s. It stated:
What do you think the $129.00 a month I send you is for anyway? For Amy’s healthcare. You need to submit this bill to your Medicaid.
Mr. Richards testified that his insurance covered Amy only if she was a student and went to the emergency room. He could not explain why he did not say that he had medical coverage for Amy in his March 2008 letter to her mother.
Review of the record reveals that Ms. Richards failed to carry her burden of proof on this issue. Although she testified that information from an emergency room and a doctor’s office indicated Amy did not have insurance coverage, the documentary evidence suggested otherwise. A doctor bill for treatment of Amy’s broken wrist does, in fact, show some PPO/HMO adjust *809 ments, and a statement of Amy’s claims showed that some of them were paid. Despite the testimony that Amy’s insurance only 114covered emergency room treatment, the documents suggest that there was other coverage as well. In light of this conflicting evidence, we are unable to find that the trial court was manifestly erroneous in denying Ms. Richards’ claim on the insurance issue.
CONCLUSION
The trial court judgment denying final periodic spousal support to Mary Ann Richards is reversed. Judgment is rendered in favor of Ms. Richards and against Mr. Richards awarding Ms. Richards final periodic spousal support of $1,691.29 per month. The order is made retroactive to January 14, 2013, the date of the hearing on remand, and subject to a credit for the SSI benefits received by Ms. Richards since that date. The trial court’s denial of the insurance claim is affirmed.
Costs of this appeal are assessed equally to the parties.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.

. Documents from a separate nonsupport proceeding which purported to show the circumstances surrounding this increase were attached to Mr. Richards’ brief as exhibits. However, they were not admitted into evidence at the hearing or otherwise found in *803 the appellate record. Attachments to appellate briefs do not constitute part of the appellate record, and, therefore, the court is precluded from considering them. State ex rel. R.C. v. Clarke, 33,023 (La.App.2d Cir.10/27/99), 743 So.2d 843.

. At some point following the dissolution of his marriage to Ms. Richards, Mr. Richards had moved to Massachusetts and remarried.

. When she filed her rule in June 2011, the SSI benefits were $674. By the time the rule was heard after our remand, the benefits were $710.

. Although Mr. Richards contends that this is an unreasonable amount for this item for one person, we note that he claimed to spend $300 per month in the same category for his three-person household.

. We have omitted several items such as education, gifts, and recreation, which Ms. Richards has conceded were not appropriate expenses.

.We observe that the fixed debt increased substantially since her November 2011 affidavit, at which time it was only $60.00.

. At oral argument, counsel for Mr. Richards was unable to dispute Ms. Richards’ dire health.

. Similarly, in a case involving the converse of the instant one — the termination of spousal support necessitating an increase in child support — the fourth circuit admitted that the entire amount paid to the mother (both spousal support and child support) was used to finance the entire household. See Langley v. Langley, 98-2759 (La.App. 4th Cir.11/10/99), 747 So.2d 183.

.Since Mr. Richards believes that the SSI benefits will essentially terminate upon an award of spousal support, Ms. Richards will apparently no longer receive the SSI check or will receive only a nominal amount. If it should develop that the parties’ representations to the lower court are incorrect, then *808 Mr. Richards can, of course, petition the lower court for relief in the future.

. This bill shows Amy was treated by Dr. Fletcher Sutton for her wrist on three different dates — 9/21/09, 10/15/09 and 11/05/09. (The bill also suggests that Dr. Sutton was in practice with Dr. Douglas Brown.) Although testimony indicated that Amy only had emergency room coverage, there are HMO/PPO adjustments on charges for the last two dates.

. This document shows payment of a November 15, 2009, charge from Dr. Sutton but denial of the other two charges from him. A charge from Dr. Douglas Brown for September 30, 2009, is also shown as paid.