PITMAN, J.
Plaintiff-Appellant Kim Ruth Triplett West appeals the trial court's judgment in favor of Defendant-Appellee Dennis Roy West. For the following reasons, we affirm.
FACTS
On March 13, 2015, Ms. West filed a petition for divorce pursuant to La. C.C. art. 102 and partition of community property. The parties married on August 22, 1980, and have one adult child. Alleging that she suffers from retinitis pigmentosa, a hereditary degenerative eye disease, Ms. West requested interim spousal support and final periodic support. She stated that she was free from fault in the dissolution of the marriage and that Mr. West has the ability to pay the requested support.
On May 6, 2015, Mr. West filed an answer and reconventional demand. He stated that Ms. West holds a degree in accounting, is a licensed certified public accountant and is capable of self-support. He alleged that Ms. West's eye condition has not and will not in the near future interfere with her ability to be gainfully employed and self-supporting. He contended that she has or will have substantial separate property to support herself and that she cannot show that she is in need of support. On December 14, 2015, the trial court signed a judgment of divorce.
A hearing on the issue of spousal support was held on August 26, 2016. Ms. West testified that she and Mr. West were married for 35 years and have one adult *271 son. She submitted an affidavit of her income and expenses, which reflected that she had no income. She explained that her income previously came from DKK, a Subchapter S corporation that she established with Mr. West, that engages in government defense contracts involving systems engineering. She stated that she owns 100 percent of the stock in DKK and that she and Mr. West are its only employees. She further stated that her role in the company is administrative work and accounting, while Mr. West secures the contracts. She noted that DKK's business has declined and that without DKK she has no income. She also noted that because of the uncertainty of DKK's future due to the community property partition, she sought other employment by sending out resumes and attending interviews, but had not been offered a job. She admitted that it would make sense for Mr. West to get DKK in the partition because of his expertise in obtaining contracts. Ms. West testified that she is 56 years old and was diagnosed with retinitis pigmentosa when she was 21 years old. This condition is a degeneration of the rods and cones in the retina, there is no treatment for it and it ultimately leads to blindness. She stated that she has been instructed by a physician not to drive. She currently lives with her father, who provides her transportation. Her condition affects her on a day-to-day basis in that she lacks independence, bumps into things, does not see things, has problems reading, cannot drive and has difficulty in crowds. Her condition also affects her work in that she never knows what days she will be able to work, she suffers eye fatigue from spending too much time on the computer and she struggles to read certain numbers. She noted that she also cannot see in the dark and that her eyes strain to adjust to different lighting. She testified about the expenses listed in her affidavit. She stated that she currently lives rent-free with her father and that the house she plans to move into (the "Jonesboro house") is paid for and unencumbered. She noted monthly expenses for lawn care, a maid, food and household supplies, clothing, maintenance, gas and oil, utilities, laundry, personal grooming, health insurance, prescriptions, over-the-counter medication, routine medical exams, new prescription glasses, life insurance, gifts to others, entertainment, hobbies and charitable contributions. She stated that her father gifted her a car, so she does not have a car note. She also listed an expense of $1,200 per month to hire a driver. She stated that she pays utilities on the Jonesboro house, but does not pay utilities at her father's house. She also testified about her standard of living during the marriage. She stated that when DKK was doing well, Mr. West allowed her and their son to buy whatever they wanted. She stated that they lived a comfortable lifestyle and that they hired people to do chores rather than do them themselves. She noted that their community property partition is still pending and that the largest cash assets are the 401(k)s.
On cross-examination, Ms. West discussed her duties at DKK and that she earned $60,000 per year for 2013, 2014 and 2015. She stated that she has lived rent-free with her father on and off since 2012 and that he pays for utilities, but she pays for her groceries. She admitted that she could rent out the Jonesboro house, which would remove expenses like utilities and lawn care, but explained that she did not intend to always live with her father. She discussed the difference between the amount of charitable donations listed on her tax returns (e.g., $2,400 in 2014) and the $600 per month she listed on her affidavit, noting that she sometimes paid in cash and did not write off every contribution.
*272 The parties stipulated to the submission of the deposition of Dr. Gary Avallone, an optometrist, who testified that Ms. West has been his patient since 2002. He stated that she has been diagnosed with retinitis pigmentosa, an inherited degenerative disease wherein the retina gradually ceases to function in affected areas. He stated that at her examination in March 2015, her visual acuity was measured at 20/40 in each eye, but that the visual fields were very constricted, exhibiting 10 to 15 degrees of complete visual field in each eye. The typical visual field will range from 70 degrees to the nasal side to 90 degrees on the temporal side. He testified that if an object is not directly in front of Ms. West, she will have great difficulty seeing it. He further testified that her future experiences with this condition will vary. Most patients with retinitis pigmentosa completely lose their sight, but some maintain a limited visual field. Ms. West may need some help to do general day-to-day tasks and may need low vision aids. He stated that she should not be driving. On cross-examination, he testified that Ms. West can work depending on the types of tasks required. There are aids available, specifically magnification, to assist her in using a computer.
On cross-examination, Mr. West testified that he now lives in Arizona and is married to Debbie Ocasio. He stated that he and Ms. West incorporated DKK in 2000 and that he was responsible for obtaining contracts for the business. He discussed his employment with Syndetics and that he deposited his payments from Syndetics into a separate account. He noted that he formed an LLC after his divorce from Ms. West. He discussed his income and expense affidavit, stating that he lives in a house owned by Ms. Ocasio and that he pays half of the monthly mortgage. He has paid no spousal support to Ms. West, but opined that she has been "very liberal" with the amount of money she spends. He further stated that they lived a comfortable lifestyle from 2000 until their separation. He testified that he is a pilot and that DKK owns an airplane. On direct examination, he indicated that his monthly income is $9,421, which he calculated by averaging his monthly income from the preceding 19 months.
On November 4, 2016, the trial court filed its judgment and reasons for judgment. It detailed Ms. West's income and concluded that her income will remain at $5,000 per month for 2016. It considered her eye condition and determined that it does not currently preclude her ability to earn a living working for DKK. It noted that the total loss of eyesight is a possibility for Ms. West, but was presently only conjecture. It also considered her needs as set forth in her affidavit of income and expenses. It found that her listed housing and utility expenses do not constitute living expenses to be considered for spousal support because she lives with her father. It further found that her transportation expenses should not be considered because her father drives her and the driving service expense she listed is too speculative. It determined that $600 per month, rather than $800, is a more reasonable amount for entertainment and gifts to others based on the parties' pre-divorce lifestyle and the evidence presented at trial. It found that $300 per month, rather than $600, was a more reasonable amount for charitable giving based on the contributions documented in her tax returns for 2012, 2013 and 2014. It further found other listed expenses to be reasonable and determined that her monthly expenses total $2,560. It also considered Ms. West's standard of living, noting that since 2012, she lived with her father out of choice, not necessity. It stated that she enjoyed a very modest lifestyle while living with her father as he provides *273 a home, utilities and transportation. Although testimony was provided that the Wests owned an airplane, an airplane hangar and other items that suggest an expensive lifestyle, there was no evidence that this was the standard of living Ms. West chose while living with her father. It noted that she had access to community funds and could have lived a more expensive lifestyle had she so chosen. It determined that Ms. West is not entitled to interim spousal support because her income exceeds her expenses without any effect on the lifestyle she enjoyed since 2012 and that she is not entitled to final periodic support at this time. It stated that she has an income from DKK of $5,000 per month. It noted that its decision does not preclude an award of final periodic support at a later date if Ms. West's circumstances change because of DKK's inability to continue compensating her at a level that would cover basic maintenance and necessities of life; because of further deterioration of her eyesight that renders her unable to perform her duties for DKK or some other employer; or because of a decision to move into a house of her own where she would incur housing, utility, transportation and other expenses currently paid for by her father.
Ms. West appeals the judgment of the trial court.
DISCUSSION
Interim Spousal Support
In her first assignment of error, Ms. West argues that the trial court erred in denying her claim for interim spousal support. She contends that she established her need for interim spousal support and Mr. West's ability to pay it. She notes that even though she currently lives with her father, she should be entitled to the very modest housing expense needed to live in the Jonesboro house. She states that even though her father currently serves as her driver, he is elderly and cannot drive well. Although the driving service is not a current expense, it is a necessary one. She notes that the trial court reduced her entertainment and gift expenses and her charitable giving. She contends that these estimated expenses were reasonable given the lifestyle enjoyed by the parties during the marriage. She states that the trial court did not reach the issue of Mr. West's ability to pay interim spousal support. She contends that he is able to afford support in the amount of $3,000 per month and that he has historically made several hundred thousand dollars per year working with Syndetics. She also states that the parties enjoyed a very high standard of living during their marriage and that the trial court erred when it only considered her standard of living only since 2012.
Mr. West argues that the trial court was reasonable in denying Ms. West's request for interim spousal support. He contends that Ms. West did not meet her burden of proving that she lacks sufficient income, or the ability to earn a sufficient income, to maintain the standard of living that she enjoyed prior to the filing of divorce. He states that because she did not meet this burden, his ability to pay is irrelevant. He contends that the trial court's findings that Ms. West's income is $5,000 per month and that her eye condition does not preclude her ability to earn a living are reasonable based on the record. He states that there is no evidence that Ms. West cannot work-to the contrary, there is evidence that she can and does work. He argues that the trial court's finding regarding Ms. West's pre-filing standard of living was reasonable based on the record. Ms. West was voluntarily living with her father with minimal expenses and there is no evidence of her lifestyle prior to living with her father.
*274 The trial court is vested with much discretion in determining an award of interim spousal support. Kirkpatrick v. Kirkpatrick , 41,851 (La. App. 2 Cir. 1/24/07), 948 So.2d 390. Its determination will not be disturbed absent a clear abuse of discretion. Id.
In a proceeding for divorce or thereafter, the court may award interim periodic support to a party. La. C.C. art. 111. Upon motion of a party or when a demand for final spousal support is pending, the court may award a party an interim spousal support allowance based on the needs of that party, the ability of the other party to pay, any interim allowance or final child support obligation and the standard of living of the parties during the marriage, which award of interim spousal support allowance shall terminate upon the rendition of a judgment of divorce. La. C.C. art. 113(A).
In Hitchens v. Hitchens , 38,339 (La. App. 2 Cir. 5/12/04), 873 So.2d 882, this court explained:
The purpose of interim spousal support is to maintain the status quo without unnecessary economic dislocation until a final determination of support can be made and until a period of time of adjustment elapses that does not exceed, as a general rule, 180 days after the judgment of divorce. Defatta v. Defatta , 32,636, 32,637 (La. App. 2d Cir. 2/1/00), 750 So.2d 503 ; Reeves v. Reeves , 36,259 (La. App. 2d Cir. 7/24/02), 823 So.2d 1023. A spouse's right to claim interim periodic support is based on the statutorily-imposed duty of the spouses to support each other during their marriage. McAlpine v. McAlpine , 94-1594 (La. 09/05/96), 679 So.2d 85.
The needs of the wife have been defined as the total amount sufficient to maintain her in a standard of living comparable to that enjoyed by her prior to the separation, limited only by the husband's ability to pay. Whatley v. Whatley , 430 So.2d 129 (La. App. 2d Cir. 1983) ; Braswell v. Braswell , 494 So.2d 1333 (La. App. 2d Cir. 1986). In order to demonstrate the need for interim periodic spousal support, the claimant has the burden of proving that he or she lacks sufficient income, or the ability to earn a sufficient income, to maintain the standard of living that he or she enjoyed during the parties' marriage. Clark v. Clark , 34,314 (La. App. 2d Cir. 11/1/00), 779 So.2d 822 ; Thomey v. Thomey , 33,000 (La. App. 2d Cir. 4/7/00), 756 So.2d 698 ; Hollowell v. Hollowell , 437 So.2d 908 (La. App. 2d Cir.1983).
Once the claimant spouse has established need, the court must examine the ability of the payor spouse to provide support. Brown v. Brown , 44,989 (La. App. 2 Cir. 1/27/10), 31 So.3d 532, citing Loftice v. Loftice , 07-1741 (La. App. 1 Cir. 3/26/08), 985 So.2d 204.
The trial court did not abuse its discretion by determining that Ms. West is not entitled to interim spousal support. She has not met her burden of establishing her need of interim spousal support. The evidence presented at trial shows that she is employed at DKK and earns an annual salary of $60,000, which demonstrates that she earns and is able to earn a sufficient income to maintain the standard of living she enjoyed during the marriage. The testimony of Dr. Avallone confirmed her current ability to work. As evidence of the standard of living during the marriage, she detailed her lifestyle since 2012, including that she lives with her father, that she does not pay rent or utilities and that her father acts as her driver. She did not provide evidence of her pre-2012 lifestyle other than testifying that it was comfortable and that the family spent freely.
*275 Because Ms. West failed to prove her need for support, we will not examine Mr. West's ability to provide support.
Accordingly, this assignment of error lacks merit.
Final Periodic Support
In her second assignment of error, Ms. West argues that the trial court erred in denying her claim for final periodic support. She contends that she was not at fault, that she is in need of final periodic support and that Mr. West has the ability to pay such support. She further contends that the trial court erred when allocating $5,000 per month income to her because there is no scenario wherein she will receive income from DKK in the future. She stated that DKK cannot operate with both her and Mr. West working for the company. She also states that her eye condition diminishes her earning capacity.
Mr. West argues that the trial court was reasonable in denying Ms. West's request for final periodic support and correctly determined that her monthly income is sufficient to meet her proven monthly needs. He notes that the parties have significant assets that Ms. West will be entitled to through the partition.
The trial court has great discretion in awarding final periodic support to a party not at fault. Brown v. Brown , 50,833 (La. App. 2 Cir. 8/10/16), 200 So.3d 887. Its determination will not be disturbed absent a clear abuse of discretion. Richards v. Richards , 49,260 (La. App. 2 Cir. 8/13/14), 147 So.3d 800.
In a proceeding for divorce or thereafter, the court may award final periodic support to a party who is in need of support, based on the needs of that party and the ability of the other party to pay, and who is free from fault prior to the filing of a proceeding to terminate the marriage. La. C.C. art. 111 ; La. C.C. art. 112(A). The court shall consider all relevant factors in determining the amount and duration of final support. La. C.C. art. 112(C).
A claimant spouse does not need to prove necessitous circumstances. Anderson v. Anderson , 48,027 (La. App. 2 Cir. 5/15/13), 117 So.3d 208, citing Jones v. Jones , 35,502 (La. App. 2 Cir. 12/5/01), 804 So.2d 161. Final periodic spousal support is limited to an amount sufficient for maintenance, as opposed to continuing an accustomed style of living. Richards v. Richards , supra . Maintenance includes the basic necessities of life, such as food, shelter, clothing, transportation, medical and drug expenses, utilities, household maintenance and income tax liability generated by spousal support payments. Id. A spouse who is working full-time for a respectable salary and has no unusual expenses or obligations is not in such need as to justify an award of final periodic support. Anderson v. Anderson , supra , citing Carr v. Carr , 33,167 (La. App. 2 Cir. 4/5/00), 756 So.2d 639.
The trial court did not abuse its discretion in determining that Ms. West is not entitled to final periodic support. She has not met her burden of establishing her need of this support. The evidence presented by her at trial demonstrates that she is currently working and is able to work. Her annual salary of $60,000 is sufficient to support her needs.
Although Ms. West contends that she needs final periodic support because of her eye condition, this condition had not created a need for support at the time of trial. At the time of trial, she was employed and employable. Dr. Avallone noted aids available to her so that she could continue working. He also testified generally about retinitis pigmentosa. He stated that most, but not all, persons with the condition will completely lose their sight. At the time of *276 trial, Ms. West had a limited visual field, but still maintains some sight. Although she might lose her sight in the future, an award of final periodic support is not made based on potential future needs. It is uncertain when or if Ms. West will become unable to pursue her employment or when or if she will have to employ a driver should her eye condition continue to deteriorate. Therefore, the trial court did not abuse its discretion when it determined that, at the time of trial, Ms. West had not proved a need for final periodic support.
Accordingly, this assignment of error lacks merit.
Modification of Award
In her third assignment of error, Ms. West argues that the trial court erred in indicating in its judgment that its decision to deny final periodic support did not preclude an award of final periodic support at a later date should her circumstances change. She contends that La. C.C. art. 114 allows for modification or termination of an award of periodic support based on a change of circumstances. She states that no award was made in this case, so it is unlikely that she could make an argument pursuant to La. C.C. art. 114 for a future award based on a change in circumstances.
Mr. West also argues that the trial court erred in inviting Ms. West to apply for modification of its denial of spousal support at a later time.
La. C.C. art. 114 states:
An award of periodic support may be modified if the circumstances of either party materially change and shall be terminated if it has become unnecessary. The subsequent remarriage of the obligor spouse shall not constitute a change of circumstance.
Although La. C.C. art. 114 refers specifically to the modification of "[a]n award of periodic support," this wording does not preclude a person whose award of final periodic support was terminated from seeking reinstatement of the award if his or her circumstances change. In Richards v. Richards , supra , the trial court granted Ms. Richards an award of final periodic support, directed that this support would end if she received Social Security disability benefits and stipulated that any party could seek amendment in the future if there was a change of circumstances. Ten years after the award of periodic spousal support, Ms. Richards's final periodic support award was terminated because she began receiving Social Security disability benefits. Two years after this termination, she filed a rule to modify the previous spousal support judgment and sought reinstatement of spousal support. She stated that her need for support was based on her inability to work due to disability and by the loss of monthly child support payments. The trial court denied her request for reinstatement. This court on appeal determined that Ms. Richards proved need and a material change in circumstances and that Mr. Richards had the ability to pay final periodic support. Therefore, this court determined that the trial court abused its discretion in denying Ms. Richards's request for reinstatement of final periodic support and ordered judgment in favor of Ms. Richards awarding her monthly final periodic support.
Similarly, the wording of La. C.C. art. 114 does not preclude a person who unsuccessfully sought final periodic support from seeking a modification of this denial if his or her circumstances change. As in Richards v. Richards , supra , in the case sub judice , the trial court hypothesized events that could qualify as material changes in circumstances when it determined that, at the time of the trial, Ms. West had not proven she was in need of final periodic support. Therefore, if Ms. West's circumstances materially change in the future, she may file a motion to modify *277 the November 4, 2016 judgment of the trial court.
Further, the doctrine of res judicata does not prevent Ms. West from seeking final periodic support in the future. A judgment does not bar another action by the plaintiff when the judgment reserved the right of the plaintiff to bring another action. La. R.S. 13:4232(A)(3). See also Politz v. Politz , 44,885 (La. App. 2 Cir. 1/27/10), 31 So.3d 552. In its November 4, 2016 judgment, the trial court reserved Ms. West's right to bring another action. It stated that it would not award final periodic support "at this time," but "[t]hat this decision would not preclude an award of final spousal support at a later date if [Ms. West's] circumstances should change."
Accordingly, this assignment of error lacks merit.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court in favor of Defendant-Appellee Dennis Roy West and against Plaintiff-Appellant Kim Ruth Triplett West. Costs of appeal are assessed to Plaintiff-Appellant Kim Ruth Triplett West.
AFFIRMED.